**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David V. SMITH, Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Matthew KOALKIN,**
**Defendant–Appellant.**

**Nos. 87–3124, 87–3125.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1989.

Decided Jan. 19, 1990.

Jane McLean, Seattle, Wash., for defendant-appellant Smith.

Linda G. Tompkins, Spokane, Wash., for defendant-appellant Koalkin.

Jerry Diskin, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before WRIGHT, ALARCON, Circuit Judges, and RAFEEDIE[*], District Judge.

RAFEEDIE, District Judge:

David Smith was convicted by a jury of operating a continuous criminal enterprise in violation of 21 U.S.C. § 848, 36 counts of aiding and abetting the distribution and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), as well as three counts of interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952(a)(3). Matthew Koalkin was convicted by a jury of conspiracy to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2, aiding and abetting travel in interstate commerce in aid of racketeering in violation of 18 U.S.C. § 1952(a)(2) and (3), and attempted distribution of cocaine in violation of 21 U.S.C. § 846.

Smith and Koalkin appeal their convictions and raise a multiplicity of issues. The principal issue we address in this opinion is the admission of a calendar/drug ledger as a co-conspirator statement under Fed.R.Evid. 801(d)(2)(E). In *United States v. Mouzin*, 785 F.2d 682, 692 (9th Cir.1986), *cert. denied*, 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986), we held that a calendar/drug ledger was inadmissible as a co-conspirator statement because the government failed to identify the author of the ledger. In the present case, however, the government established that the calendar/drug ledger was made during the course and in furtherance of a conspiracy and the identity of the author of the calendar/drug ledger was reasonably certain. We affirm the convictions and the sentences.

## FACTUAL BACKGROUND

Following an extensive investigation of suspected drug trafficking activities in Longview, Washington, involving both personal surveillance and telephone wiretaps, Donald Sowell was arrested for possession of cocaine in 1984. A search of Sowell's residence turned up a photostatic copy of a 1982–1983 calendar which appeared to contain narcotic-related notations. Before a Grand Jury, Sowell testified that he had been employed by Leon Williams to obtain cocaine from appellant Smith. Other witnesses testified that appellant Koalkin acted as a courier for cocaine supplied by Smith.

[*] Honorable Edward Rafeedie, United States District Judge for the Central District of California, sitting by designation.

On September 23, 1986, the Federal Grand Jury for the Western District of Washington returned a 49-count Indictment charging Smith with operating a continuing criminal enterprise in violation of 21 U.S.C. § 848. In addition, Smith was charged with thirty-six counts of aiding and abetting the distribution and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and three counts of interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952(a)(3). Koalkin was charged with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, forty-one counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2, two counts of aiding and abetting travel in interstate commerce in aid of racketeering in violation of 18 U.S.C. § 1952(a)(2) and (3), and one count of attempted distribution of cocaine in violation of 21 U.S.C. § 846.

Prior to trial, Smith and Koalkin both filed a motion in limine to exclude evidence relating to the calendar/drug ledger supposedly belonging to Williams. The motion was denied over strenuous defense objection.

At trial, nine witnesses testified concerning Williams' calendar/drug ledger. Sowell testified that he reported all of his transactions to Williams for record keeping and he occasionally saw Williams make notations of those transactions in a calendar-type ledger book during 1982. Upon Williams' death in 1983, Sowell realized the importance of the ledger and asked George Humphrey, the manager of Williams' Hawaiian farm to send him Williams' "book." Humphrey xeroxed the original calendar and sent a copy to Sowell, who testified that he did not alter any of the entries after he received it. Sowell also testified that he gave photostatic copies to others to review, but received them back sometime later, after which he stored them in a closet at his residence where they were discovered in the search following his arrest in April 1984.

When Williams' calendar was shown to Sowell at trial, he testified that he recog-nized it as the copy that was mailed to him by Humphrey. He also testified that he was familiar with the meaning of the entries in the calendar and that he was able to decipher the code that Williams had used. In addition, he claimed that he had an independent recollection of the events recorded by Williams on the calendar.

Nathan Watkins, Leon Williams' brother, testified that after his brother died, his brother's wife, Janet Williams, asked him to help her unravel the financial aspects of her husband's drug dealings. Watkins testified that he found the calendar ledger which Williams had kept for the years 1982 and 1983 and that he was able to decipher the code that Williams had used. Watkins also testified that he recognized the xerox copy of the calendar when it was shown to him during the trial as a photocopy of the original calendar notebook his brother had authored. In addition, he identified the entries in the calendar as being in his brother's handwriting and he testified that he had observed his brother making similar entries on an earlier calendar.

Several other witnesses also testified concerning Williams' use of the calendar/drug ledger. David Vogelstein, Williams' attorney, testified that he received cash from Williams on a regular basis during 1982 and that he used the money to pay Williams' living expenses. Vogelstein kept records of the cash he received from Williams and those records coincided with the entries on the calendar indicating cash disbursements from Williams to Vogelstein. Janet Williams, Leon Williams' widow, testified that she reviewed certain records belonging to her husband and that one of those records was a calendar ledger. She also testified that after she reviewed the calendar with Watkins, she destroyed the original. Leone Harrison, Williams' first wife, testified that the handwriting on the calendar appeared to be that of her ex-husband. Michael Crumpacker testified that he received cocaine directly from Williams and that he had observed Williams use a calendar as a record-keeping ledger for recording the receipt of cash and the distribution of cocaine. Crumpacker identified the entries

which referred to "MC" as being consistent with the amount of drugs and exchange of money between Williams and himself. Robert Black testified that on nine different occasions he obtained kilogram quantities of cocaine from Williams and that those occasions were consistent with the respective entries on the calendar. Richard Stanley testified that the entries which referred to "RS" were consistent with the drug transactions engaged in between Williams and himself. George Humphrey testified that he had regular contact with Williams. He described how Williams would make entries in his calendar book. Humphrey identified the writing in the calendar as that of Williams. Humphrey also had an independent recollection of the accuracy of several of the entries. Additionally, he stated that he did in fact photocopy the original calendar and sent a copy to Sowell at his request.

After a 43–day trial, appellants were convicted. On July 17, 1987, Smith was sentenced to 45 years for conducting a continuing criminal enterprise, 15 years for the aiding and abetting counts with a special parole term of three years, and five years probation on the interstate travel counts. Koalkin was sentenced to a 15–year prison term, plus 15 years special parole.

## DISCUSSION

### I. Admission of the Calendar/Drug Ledger

Smith and Koalkin argue that government's exhibit 20–1, which was a calendar/drug ledger supposedly belonging to Leon Williams, a co-conspirator, should not have been admitted into evidence for the following reasons: (1) the notations on the calendar were hearsay; (2) admission of the calendar violated the confrontation clause of the sixth amendment; (3) the calendar was a xerox copy and therefore it was not the best evidence; (4) the chain of custody was broken; and (5) the calendar was more prejudicial than probative.

The standard for review of a trial court's admission of evidence under the co-conspirator statement provision of Fed.R.Evid. 801(d)(2)(E) is two-tiered. We consider de novo the legal question of whether the government established a prima facie showing of conspiracy but apply a clearly erroneous standard in reviewing whether a challenged statement was made in the course and furtherance of a conspiracy. *United States v. Smith,* 790 F.2d 789, 794 (9th Cir.1986) (citing *U.S. v. Rosales,* 584 F.2d 870, 872 (9th Cir.1978). Admission of the calendar/drug ledger was proper.

### (1) Fed.R.Evid. 801(d)(2)(E)—Co-Conspirator Statement

The trial court properly admitted government's exhibit 20–1 into evidence pursuant to Fed.R.Evid. 801(d)(2)(E), which provides that a co-conspirator statement is not hearsay. Federal Rule of Evidence 801(d)(2)(E) provides in relevant part that "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

In *United States v. Mouzin,* 785 F.2d 682 (9th Cir.1986), *cert. denied* 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986), we considered the issue of whether a calendar/drug ledger could be admitted into evidence as a co-conspirator statement. Defendant Mouzin was convicted of nineteen separate offenses including conspiracy to violate the narcotic laws and managing a continuing criminal enterprise. On appeal, the defendant argued that the trial court erred in admitting a ledger obtained from a co-defendant's residence which allegedly detailed a cocaine business. *Id.* at 685. The ledger was written in Spanish and did not contain any explicit references to cocaine. The ledger did not mention the name of any person the government could identify at trial. The author of the ledger entries was also never established at trial. Finally, the government's handwriting expert was unable to positively link the entries in the ledger to the handwriting of the co-conspirator. *Id.* at 691. The government introduced the ledger into evidence through the testimony of a DEA agent who testified that in his expert opinion the ledger was a record of a large cocaine operation. The agent also testified that he had

no personal knowledge regarding the transactions chronicled in the ledger nor could he identify any of the persons named in the ledger. *Id.* The trial court admitted the ledger into evidence under the co-conspirator exception because it was found at the co-conspirator's residence and the co-conspirator's fingerprints were on the ledger. *Id.* We found, however, that the government's failure to identify the author of the ledger rendered it inadmissible on the ground of lack of foundation. *Id.* at 692.

■ In order for a statement to be admissible under Fed.R.Evid. 801(d)(2)(E), a statement by a co-conspirator "must be made in the course of and in furtherance of a conspiracy." *Id.; United States v. Ordonez,* 737 F.2d 793, 801 (9th Cir.1984). Three separate inquiries must be made by the court. First, the court must find independent proof of the existence of the conspiracy. Second, the court must find that the proposed statement was made in furtherance of the objectives of the conspiracy. Third, the court must find that the proffered statement was made during the course of the conspiracy. *Mouzin,* 785 F.2d at 692. In addition, a necessary corollary to the above three conditions is the requirement that there must be independent proof of the defendant's and the declarant's status as members of the same ongoing conspiracy before a statement will be admitted under this exception because "[i]n order to corroborate or refute this status, the litigants must know the identity of the declarant." *Id.*

■ Although in *Mouzin* we found that the ledger was not admissible as a co-conspirator statement, the circumstances surrounding the admittance of government's exhibit 20–1 are sufficiently different such that the trial court did not abuse its discretion in admitting it into evidence. In *Mouzin,* the ledger was written in Spanish and did not mention the name of any person or co-conspirator the government could identify at trial. The author of the ledger entries also was never established at trial. In the present case, however, the government demonstrated through the testimony of nine witnesses that Williams kept the calendar/drug ledger as a record of his money and drug transactions during 1982 and 1983. As a result of this testimony, the government sufficiently demonstrated that Williams authored and made recordings in the calendar/drug ledger in the course of and in furtherance of a conspiracy to distribute cocaine.

We find that the government met the three criteria outlined in *Mouzin* in order to admit government's exhibit 20–1 as a co-conspirator statement. First, there was independent proof of the existence of the conspiracy. During the trial, the government provided abundant evidence of numerous financial transactions and distributions of cocaine undertaken by Williams. Second, the government established that the calendar/drug ledger was made in furtherance of the objectives of the conspiracy. The government demonstrated through the testimony of witnesses that Williams kept the calendar/drug ledger as a record of his financial transactions regarding the purchase and sale of cocaine. Many of these witnesses testified that the financial transactions recorded on government's exhibit 20–1 coincided exactly with the financial transactions they conducted with Williams. Furthermore, there was evidence that the entries on the calendar/drug ledger were made in order for Williams to keep track of who owed him money when the cocaine was distributed up front. Third, the government established that the calendar/drug ledger was made during the course of the conspiracy. The government offered sufficient proof that the calendar was kept and the entries were made during the 1982 and 1983 year when Williams actively was engaged in the purchase and distribution of cocaine. Therefore, we find that the evidence amply supported the government's theory that government's exhibit 20–1 was authored by Williams and the trial court did not err in admitting it into evidence under Fed.R. Evid. 801(d)(2)(E).

*(2) Confrontation Clause*

■ Appellants argue that admission of government's exhibit 20–1 violated their

sixth amendment right of confrontation. Specifically, appellants argue that they were not given the opportunity to cross-examine the author of the calendar as to its meaning or its accuracy.

Appellants' argument is without merit. In *Bourjaily v. United States*, 483 U.S. 171, 183–84, 107 S.Ct. 2775, 2783, 97 L.Ed.2d 144 (1987), the Supreme Court stated that "the Confrontation Clause does not require a court to embark on an independent inquiry into the reliability of statements that satisfy the requirements of Rule 801(d)(2)(E)." Since Williams' calendar was properly admitted into evidence under Fed.R.Evid. 801(d)(2)(E), the trial court was not required to conduct a separate inquiry into the reliability of the calendar and appellants have not shown a violation of their sixth amendment right of confrontation.

### (3) Fed.R.Evid. 1003—The Best Evidence Rule

■ Appellants contend that the government's exhibit 20–1 was not the best evidence since there existed a genuine question as to the authenticity of the original calendar. Specifically, appellants claim that because the handwriting on the calendar/drug ledger was not positively identified by an expert and it had been in the possession of many individuals, there was a genuine question as to the authenticity of the calendar/drug ledger such that the original should have been produced. We find no merit to this argument.

First, pursuant to Fed.R.Evid. 1003, a duplicate is admissible to the same extent as the original in many cases. Second, there was no genuine issue as to the authenticity of the original. Nine witnesses supported the authenticity of government's exhibit 20–1 as the calendar/drug ledger of Williams. Three witnesses, including Williams' brother and former wife, identified the handwriting as that of Williams. Three witnesses also testified that they

saw Williams use the calendar to record drug trafficking notations. Humphrey testified that the calendar introduced at trial was the xerox copy he made of the original calendar and which he subsequently mailed to Sowell. Sowell testified that after receiving the calendar, he did not alter any of the entries. Records of an attorney who received cash from Williams also were received in evidence, and those records coincided with Williams' notations reflecting cash disbursements to the attorney. Therefore, we find that there was not a genuine issue raised as to the authenticity of government's exhibit 20–1 and that it was admissible under Fed.R.Evid. 1003.

### (4) Chain of Custody

■ Smith argues that the chain of custody was broken in that Humphrey copied the original calendar and mailed the xerox copy to Sowell. Thereafter, Sowell gave the xerox copy to Stanley for a period of time. Stanley returned the xeroxed calendar to Sowell and the police found it during a search of Sowell's residence. Based on the above, Smith claims that because the chain of custody was broken, government's exhibit 20–1 should not have been admitted into evidence.

Smith's argument is meritless. He does not contend that the chain of custody was broken from the time the police seized the xerox calendar at Sowell's residence until the exhibit was offered into evidence. Therefore, there is no showing that the chain of custody was broken.

### (5) Fed.R.Evid. 403

■ Appellants argue that government's exhibit 20–1 should have been excluded because the calendar was more prejudicial than probative.[1] In deciding whether the prejudicial effect of the evidence outweighs its probative value, trial courts are given wide discretion. *United States v. Clawson*, 831 F.2d 909, 912 (9th Cir.1987), *cert.*

---

1. Federal Rule of Evidence 403 provides that: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*denied* —— U.S. ——, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988).

Appellants have not demonstrated that the danger of unfair prejudice substantially outweighed the probative value. The calendar/drug ledger was authenticated and its reliability and relevancy was established through the testimony of nine witnesses. Given the importance of presenting the jury with an accurate version of appellants' activities in relation to the charged conspiracy, we find that the trial court did not abuse its discretion under Fed.R.Evid. 403 in admitting government's exhibit 20–1 into evidence.

## II. Other Issues

### A. *Request for an Investigator*

■ Koalkin argues that the district court erred in denying his request for an investigator under 18 U.S.C. § 3006A(e). Section 3006A(e)(1) authorizes court-appointed counsel to obtain investigative services in appropriate cases.[2] The decision to grant or deny a request for investigative services under § 3006A(e) is committed to the discretion of the trial court, and will be overturned on appeal only for an abuse of discretion. *United States v. Goodwin*, 770 F.2d 631, 635 (7th Cir.1985), *cert. denied* 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986).

In order to succeed on appeal, Koalkin must show, on the basis of both the original showing to the district court and the later trial record, that the lack of investigative services prevented him from receiving effective assistance of counsel under the sixth amendment. *United States v. Fields*, 722 F.2d 549, 551 (9th Cir.1983), *cert. denied* 466 U.S. 931, 104 S.Ct. 1718, 80 L.Ed.2d 189 (1984). Under the rule of this circuit, he must demonstrate that reasonably competent retained counsel would require the investigative work for a client with the means to pay for it and that the denial therefore prejudiced appellant's de-

fense. *Id.* At a pretrial hearing on January 27, 1987, Koalkin's lawyer requested an investigator to identify the "comings and goings, both of Mr. Koalkin and other people, concerning the various witnesses that would be brought in to testify for the Government concerning impeachment. . . ." The Court denied the request and invited Koalkin's attorney to renew the motion if during trial it became necessary to obtain a specific investigative service. This explanation by Koalkin's attorney does not show that investigative services were necessary to Koalkin's defense. Koalkin's attorney never explained to the Court how the "comings and goings both of Mr. Koalkin and other people" would contribute to the defense of his client. In the absence of a concrete explanation to the trial court as to why an investigator was necessary to Koalkin's defense, we do not believe that it was an abuse of discretion for the trial court to deny Koalkin's request.

On appeal, Koalkin argues that an investigator was necessary because the case was substantial and complex, involving a 49–count indictment and fourteen file drawers of discovery material in the government's possession. The case also contained seven defendants and eighteen unindicted co-conspirators, with incidents occurring from 1981 through 1984. Such factors alone, however, fail to show why an investigator was necessary or why Koalkin's attorney could not have completed the investigative work himself. In *Goodwin*, the Seventh Circuit held that denial of an investigator was proper where appellant merely stated that an investigator was needed because of complex facts, the witnesses were located throughout the United States, four of whom were high-level government officials, and the case had national and international ramifications. The Seventh Circuit found that these reasons failed to explain why an investigator was necessary or why appellant's attorney could not have done the investigative work. 770 F.2d at 635.

**2.** 18 U.S.C. § 3006A(e)(1) provides in part that:
Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte applica-

tion. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court ... shall authorize counsel to obtain the services.

Accordingly, we find that it was not an abuse of discretion for the trial court to deny Koalkin's request.

### B. Severance

Koalkin argues that the district court erred in denying his severance motion. Whether a severance is necessary rests within the sound discretion of the district court. *United States v. Ramirez*, 710 F.2d 535, 545 (9th Cir.1983). The general rule is that persons jointly indicted should be jointly tried. *Id.* To obtain a severance under Fed.R.Crim.P. 14, a defendant must show prejudice.[3] Some prejudice is inherent in any joinder of defendants. If only "some" prejudice is all that need be shown, few multiple defendant trials would be held. *United States v. Vaccaro*, 816 F.2d 443, 448 (9th Cir.1987), *cert. denied* 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987). Thus, a defendant must show "clear," "manifest," or "undue" prejudice from a joint trial. *United States v. Polizzi*, 801 F.2d 1543, 1554 (9th Cir.1986).

On the eighteenth day of trial as evidence was being admitted concerning statements made by Smith, Koalkin moved for severance. The severance motion was denied. Koalkin claims that he was prejudiced by the introduction of this repetitive and cumulative financial evidence relevant to Smith, as well as by evidence of Smith's alleged statement implicating others.

Koalkin's argument is without merit. First, Koalkin waived his severance motion by not renewing it at the close of the evidence. *United States v. Monks*, 774 F.2d 945, 949 (9th Cir.1985).[4] Second, Koalkin has not shown that the joint trial resulted in specific and compelling prejudice. The possibility that some of the evidence against Smith "rubbed off" on Koalkin is insufficient to prove compelling prejudice. The financial evidence relating to the charge of engaging in a continuing criminal enterprise against Smith, while not directly relevant to Koalkin's charges, was not a substantial portion of the government's case. In addition, several limiting instructions were given by the trial court concerning the financial evidence relevant to Smith. Since Koalkin was acquitted of twenty-five counts and Smith was acquitted of six counts, the jury was able to compartmentalize the evidence with respect to each defendant.

### C. Fed.R.Evid. 801(d)(1)(B)—Prior Consistent Statements

The government in rebuttal introduced portions of one witness' grand jury testimony and another witness' statement made during an interrogation as prior consistent statements. Pursuant to Fed.R. Evid. 801(d)(1)(B) "[a] statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." In general, a district court has broad discretion regarding whether to admit a prior consistent statement under Fed.R.Evid. 801(d)(1)(B). *Breneman v. Kennecott Corp.*, 799 F.2d 470, 472 (9th Cir.1986). However, a prior consistent statement is admissible only if it was made before the witness had a motive to fabricate. *Id.* at 473.

During the trial, the defense contended that the testimony of government

---

3. Federal Rule of Criminal Procedure 14, provides in pertinent part:

   If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

4. The Ninth Circuit has stated:

   Where prejudice from joinder appears in the course of trial, it has been held that the request for severance must be renewed at the close of the evidence or it will be treated as waived. Appellant did not renew his request for severance at that point. His failure to do so at least suggests that the prejudice now asserted to have resulted from the joinder may not have seemed so substantial to appellant in the context of trial....
   *Williamson v. United States*, 310 F.2d 192, 197 (9th Cir.1962) (footnotes omitted).

witnesses, Michael Crumpacker, Robert Black, and others was fabricated to build a case against Smith as the leader of a conspiracy to distribute cocaine. The defense insinuated that the witnesses had planned the story they would tell when they were jointly incarcerated pending trial. During rebuttal, the government offered into evidence the witnesses' testimony, consistent with their trial testimony, which had been provided prior to the time these witnesses had been placed together in a local jail. Specifically, the government asked Crumpacker questions in regards to a January 1986 interrogation which had been transcribed by a court reporter. Similarly, the government asked Black about the statements he had given in June 1986 before the Federal Grand Jury, which statements predated his joint incarceration with the other government witnesses.

The defense sharply attacked the credibility of these government witnesses implying that they were testifying out of a motive to reduce their criminal sentences. However, at the time Black and Crumpacker made their prior statements, they had already entered into plea agreements with the government. Under these circumstances, we find that their prior consistent statements may be admitted because the statements were offered to rebut a charge of recent fabrication. *See United States v. Stuart,* 718 F.2d 931, 934–35 (9th Cir.1983) (introduction of prior consistent statement made prior to witness entering into a plea

agreement found proper). Therefore, the district court properly exercised its discretion to admit the prior consistent statements pursuant to Fed.R.Evid. 801(d)(1)(B).

### D. Intercepted Communications

Two conversations were overheard between appellant Smith and an individual named Gary Nelson as a result of a court-ordered wiretap on Nelson's home telephone. Smith argues that the application for a wiretap on the telephone of Nelson failed to establish either probable cause or necessity and that the officers did not properly minimize the interception of non-pertinent calls. Therefore, Smith argues, the district court erred in not suppressing the two intercepted conversations.

■ The procedure for interception of wire or oral communication is set forth in 18 U.S.C. § 2518.[5] A necessity requirement exists in order to limit the use of wiretaps because they are highly intrusive, and to assure that a wiretap is not used where traditional investigative techniques are sufficient. *United States v. Bailey,* 607 F.2d 237, 241 (9th Cir.1979), *cert. denied,* 445 U.S. 934, 100 S.Ct. 1327, 63 L.Ed.2d 769 (1980). Courts are required to interpret the necessity requirement in a practical and common sense fashion. Although a wiretap should not be used routinely as the first step in a criminal investigation, it need not be the last resort. *Id.* at 241–42.

5. Pursuant to this statutory provision, an application for an order authorizing the interception of a wire communication must be made in writing upon oath or affirmation to a judge and the application must set forth the following information: (1) the identity of the investigative or law enforcement officer making the application; (2) a complete statement of the circumstances relied upon by the applicant which justify his/her belief that the order should be issued; (3) a complete statement as to whether other investigative procedures have been tried and failed; (4) a statement of the period of time for which the interception is to be maintained; and (5) a complete statement concerning all previous applications known to the applicant. 18 U.S.C. § 2518(1)(a)-(e).

Upon such application, the judge may approve interception of wire communication if the judge determines that: (1) there is probable cause to

believe that an individual is committing or has committed or is about to commit, for example, a drug related offense; (2) there is probable cause to believe that communications regarding that offense will be obtained through the wire interception; (3) normal investigative procedures have been tried and have failed, or will not succeed if tried; (4) there is probable cause to believe that the facility where the wire communications are to be intercepted are being used or about to be used in connection with the offense. *Id.* at § 2518(3)(a)-(d). No order authorizing the interception of wire communication may not exceed 30 days unless an extension is granted. *Id.* at § 2518(5). In addition, every order must contain a provision that the interception be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this statute. *Id.*

Some non-relevant calls may be intercepted. However, a surveillance must be conducted in a manner that will minimize the interception of such calls. *Scott v. United States*, 436 U.S. 128, 140, 98 S.Ct. 1717, 1724, 56 L.Ed.2d 168 (1978). Reliance on the percentage of non-pertinent calls may provide some assistance in determining the reasonableness of the surveillance. Although there may be situations where the percentage of non-pertinent calls is high, interception still may be reasonable. *Id.* For example, as the Supreme Court noted in *Scott*, many of the non-pertinent calls may be short in duration or have been only one-time calls. Additionally, many of the non-pertinent calls may be ambiguous in nature or in coded language. In these circumstances, it would be difficult for law enforcement agents to realize the calls were non-pertinent prior to their termination. *Id.*

■ The district court conducted an evidentiary hearing to determine whether the two intercepted conversations between Smith and Nelson were admissible. The court reviewed the wiretap application and a sixty-two page affidavit in support of the wiretap. The affidavit set forth a lengthy and exhaustive description of an ongoing investigation of the cocaine-related activities of numerous individuals. Based on the evidence presented, we note that the district court was correct in finding that there existed probable cause to believe that drug-related offenses were being committed and that the wiretap was necessary. Furthermore, the district court properly determined that the necessity requirement had been met since there was ample evidence that normal investigative procedures were becoming too dangerous and that the use of informants and physical surveillance had become impossible. Finally, after hearing testimony of an FBI agent regarding minimization of non-pertinent calls, we find that the district court correctly held that the percentage of calls minimized during the four-week period of the wiretap conformed with the requirements of 18 U.S.C. § 2518(5).

### E. *Prosecutorial Misconduct*

Koalkin asserts that the district court erred in denying his motion for a new trial based on alleged prosecutorial misconduct. The alleged misconduct is that key prosecution witnesses and unindicted co-conspirators were held together in the same jail cell prior to trial, and these witnesses were overheard discussing their testimony. Koalkin argues that the prosecutor's housing of witnesses together "would foreseeably lead to collusion and materially affected the fairness of the trial."

■ To succeed on a motion for a new trial based on prosecutorial misconduct, a defendant must show first that the prosecution engaged in improper conduct and second that it was more probable than not that the prosecutor's conduct "materially affected the fairness of the trial." *United States v. Polizzi*, 801 F.2d 1543, 1558 (9th Cir.1986) (citing *United States v. McKoy*, 771 F.2d 1207, 1212 (9th Cir.1985)). Koalkin has failed to make either showing. There is no support for Koalkin's suggestion that the Assistant United States Attorney had any control over where the prospective inmate witnesses were housed pending trial. With respect to whether the alleged misconduct materially affected the fairness of the trial, there is no concrete evidence that the witnesses colluded in their testimony. In fact, the government offered into evidence certain witnesses' prior grand jury testimony—provided before those witnesses had been placed together in a local jail—and this grand jury testimony was consistent with the witnesses' trial testimony.

### F. *Sentencing*

Appellants argue that the district court exceeded the bounds of its discretion in imposing their respective sentences. They contend that the district court enhanced their sentences because of their non-cooperation with the government. A sentencing judge generally has wide discretion in determining what sentence to impose. *United States v. Lopez–Gonzales*, 688 F.2d 1275, 1276 (9th Cir.1982). The exercise of discretion requires a consideration of all

the circumstances of the crime, including the aggravating and mitigating circumstances which may be involved. *Id.* at 1276–77.

■ A judge, however, may not enhance a sentence based on the defendant's failure to cooperate by implicating others. *United States v. Safirstein*, 827 F.2d 1380, 1387–89 (9th Cir.1987). The sentencing record reveals no such impropriety. The judge sentenced Smith for the offenses for which he was convicted and did not indicate he was punishing him for non-cooperation. There was no abuse of discretion.

Nor did the judge enhance Koalkin's sentence for failure to cooperate. The court did comment that Koalkin's priorities were misplaced and that if he wished assistance he should consider being candid with the authorities. There was nothing improper about these comments. *Cf. United States v. Carter*, 804 F.2d 508, 513–15 (9th Cir. 1986) (court's comments at sentencing that guilty pleas save taxpayer money did not indicate court was punishing defendant for having chosen to stand trial). The judge sentenced Koalkin to far less time than could have been imposed. Therefore, we find that the district judge did not abuse his discretion in sentencing Koalkin, nor did he consider any improper information in imposing his sentence. Accordingly, both sentences are upheld.

AFFIRMED.