19 F.3d 30
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wayne Patrick GEBRO, Defendant-Appellant.
 No. 92-50056.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 31, 1994.
Decided March 3, 1994.
 
 Before: SNEED, THOMPSON, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The defendant, Wayne Patrick Gebro, appeals his conviction for aiding and abetting an armed bank robbery, in violation of 18 U.S.C. Secs. 2 and 2113(a), (d), and the district court's denial of his motion for a new trial. He objects to: (1) the district court's refusal to grant him additional investigative funds; (2) the government's presentation of conflicting testimony; and (3) several of the district court's evidentiary rulings. This court has jurisdiction over Gebro's timely appeal under 28 U.S.C. Sec. 1291. We affirm.
 
 I.
 FACTS AND PRIOR PROCEEDINGS
 
 3
 On February 9, 1990, two armed men robbed the Atlantic Financial Savings and Loan Association in a shopping center at the corner of Balboa and Nordhoff Boulevards in Sepulveda, California. Upon leaving the bank, the two men ran east on a sidewalk adjacent to Nordhoff Boulevard and went through a break in the wall bordering the sidewalk. They entered a van parked about 40 feet away with its engine running. Gebro was the van's driver.
 
 
 4
 Rick Wise, a bank teller, chased the two robbers running down Nordhoff Boulevard. At the break in the wall, he saw them enter the van. Joel Goldberg, another teller, approached in his car and picked up Wise. The two tellers followed the van. At one point, Wise thought he saw one of the robbers in the front passenger seat. While stopped at a traffic light, they saw Officer John Harrington, whose police car was parked in a traffic island. They alerted Harrington to the van, and Harrington followed it. Goldberg and Wise also continued their pursuit.
 
 
 5
 The van increased speed and changed lanes. At the corner of Roscoe and Balboa Boulevards, it cut across a parking lot and proceeded north on Balboa. As the van turned left from Balboa into a driveway of an apartment complex, Harrington informed the Los Angeles Police Department by radio that he was turning at the 8600 block of Balboa Boulevard.
 
 
 6
 Following the van down the driveway, Harrington saw a man wearing a black and white shirt jump from the van as it neared the end of the driveway, where it made a left turn into an alley behind the apartment complex. The second robber apparently jumped out immediately after the first robber. As Harrington, Goldberg, and Wise followed, the van turned left near the end of the alley into a space behind the apartment complex at 8427 Balboa. When the van stopped, Gebro exited the van and ran. Harrington chased, ordered Gebro to the ground, and arrested him.
 
 
 7
 One of the robbers, Anthony DiBlasio, was found near the scene. He pleaded guilty. The other robber was not found. A bag containing the gun and stolen money was recovered near the apartment complex.
 
 
 8
 In February 1990, Gebro was charged with aiding and abetting an armed bank robbery in violation of 18 U.S.C. Secs. 2 and 2113(a), (d). Gebro proceeded to a jury trial with appointed counsel and was found guilty on May 3, 1990. Gebro appealed.
 
 
 9
 On February 22, 1991, this court reversed Gebro's conviction and remanded for a new trial because a fourth element had been improperly added to the jury instruction defining duress. On September 16, 1991, the district court granted Gebro's motion for dismissal without prejudice due to a Speedy Trial Act violation. On September 17, 1991, Gebro again was charged with aiding and abetting an armed bank robbery. Trial began on October 17, 1991, but ended in a mistrial the next day.
 
 
 10
 On November 1, 1991, Gebro requested funds for investigative services under the Criminal Justice Act. The request was denied. Following a second jury trial, Gebro was found guilty as charged. Gebro moved for a new trial without success and was sentenced to 132 months imprisonment followed by five years of supervised release and was ordered to pay a special assessment of $50.
 
 II.
 DISCUSSION
 
 11
 On appeal, Gebro contends that the district court improperly denied his request for investigative funds, that the government intentionally used false testimony, and that the district court abused its discretion in making several evidentiary rulings.
 
 A. Funding Request
 
 12
 Gebro first argues that the district court's refusal to provide additional investigative funds prevented him from developing one of the trial's key factual issues, viz., the distance he drove in his van after the robbers had jumped from it. This issue was important to his duress defense because the farther he drove after the men left the van, the more it appeared that his aid was voluntary and uncoerced. Gebro maintained that the distance was approximately 200 feet while the government maintained that it was about one-fourth of a mile, or over 1000 feet.
 
 
 13
 We review the district court's denial of a request for investigative funds for abuse of discretion. See United States v. Smith, 893 F.2d 1573, 1580 (9th Cir.1990). Gebro must show, on the basis of both his application to the district court and the trial record, that the lack of investigative services denied him effective assistance of counsel. Id.; United States v. Fields, 722 F.2d 549, 551 (9th Cir.1983), cert. denied, 466 U.S. 931 (1984); see 18 U.S.C. Sec. 3006A(e)(1).[1] He must demonstrate that: (1) reasonably competent retained counsel would have required the investigation for a paying client and (2) his defense was prejudiced from the denial of funds. Smith, 893 F.2d at 1580; Fields, 722 F.2d at 551. Prejudice must be shown by clear and convincing evidence. United States v. Becerra, 992 F.2d 960, 965 (9th Cir.1993).
 
 
 14
 Gebro has failed to make the necessary showing. First, he has not demonstrated that a reasonably competent attorney would have required the investigation, assuming he was able to pay for it. He asserted in his application that he needed to locate and question witnesses who could testify whether someone was seated in the van's front passenger seat during the chase and whether he had turned into the 8600 block of Balboa, as the government contended, or the 8400 block, as the defense contended. However, Gebro has not suggested what his attorney might have done differently had the investigation been authorized. In light of the abundant evidence presented in support of Gebro's duress defense, Gebro has not established that reasonable counsel would have conducted further investigation.[2]
 
 
 15
 Second, Gebro failed to demonstrate by clear and convincing evidence that the denial of funds caused him prejudice. Gebro's funding request merely stated that additional investigative work was "necessary." He did not show with any particularity how the information he sought reasonably could be attained. Likewise, Gebro's statements on appeal are too conclusory to constitute the requisite showing of prejudice. Therefore, the district court did not abuse its discretion in denying his request for funds.
 
 B. Inconsistent Testimony Regarding a Shirt
 
 16
 Gebro urges us to reverse his conviction because of trial testimony that he believes was false and could have affected the verdict. He contends that the government intentionally misled the jury, first, by presenting the testimony of two witnesses who identified a black and white shirt as the one worn by one of the robbers and then, second, by presenting the testimony of a detective who said that he recovered the same shirt from Gebro's van. As Gebro sees it, his defense was prejudiced because the jury might have believed he was aiding the robbers if he allowed one of them to remove his shirt while in the van.
 
 
 17
 The rules are quite clear. "[I]f the prosecution knowingly uses perjured testimony, or ... knowingly fails to disclose that testimony used to convict a defendant was false, the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury verdict." United States v. Endicott, 869 F.2d 452, 455 (9th Cir.1989) (citing United States v. Bagley, 473 U.S. 667, 678-80 (1985)). A conviction obtained by such prosecutorial misconduct is fundamentally unfair and constitutes a denial of due process. Bagley, 473 U.S. at 678, 679 n. 8.
 
 
 18
 Here, the supposedly false testimony consists of Wise's and Goldberg's in-court identification of a shirt as that worn by one of the robbers and Detective Lawrence DeLosh's testimony that the shirt was found in the van. This testimony, Gebro points out, is in conflict with both an affidavit of FBI Special Agent James Hall stating that the black and white shirt was found at another location with a robber's bag, money, and gun and the testimony of Wise, Goldberg, and Harrington that a man in a black and white shirt jumped from the van. Without doubt a conflict in the evidence existed.
 
 
 19
 It does not, however, demonstrate that the government knowingly presented perjured testimony. It may merely reveal an error in DeLosh's memory concerning the shirt's location or mistaken recollections of Wise, Goldberg, and Harrington. Nothing indicates a deliberate deception on anyone's part.[3] Nor did defense counsel utilize its opportunity to point out any inconsistency to the jury. To illustrate, DeLosh testified after Wise, Goldberg, and Harrington, but counsel did not cross-examine DeLosh about the conflict between his testimony and theirs. Nor did the defense, having access to Hall's affidavit and having called him as a witness, question him about the statement in his affidavit stating where the shirt was found. Any attempt to turn these deficiencies in the examination of witnesses into a constitutional violation by the government must fail.
 
 C. Evidentiary Rulings
 
 20
 Gebro next challenges three specific evidentiary rulings. First is the decision to reopen the government's cross-examination of him; next is the admission of a citation notice on which two names and phone numbers were written in his handwriting; and third is the admission of prior consistent statements of the government's rebuttal witness. We review these rulings for abuse of discretion. See United States v. Daly, 974 F.2d 1215, 1216-17 (9th Cir.1992) (per curiam) (determining relevance); United States v. Payne, 944 F.2d 1458, 1470 (9th Cir.1991), cert. denied, 112 S.Ct. 1598 (1992) (admission of prior consistent statement); United States v. Hernandez, 876 F.2d 774, 778 (9th Cir.), cert. denied, 493 U.S. 863 (1989) (admitting documentary evidence).
 
 
 21
 Gebro's first objection is that the district court erred in allowing the government to reopen its cross-examination of him to inquire about newly acquired evidence, the notice to appear in court found in Gebro's van at the time of the robbery. Gebro argues that the government should have produced this evidence during discovery pursuant to Federal Rule of Criminal Procedure 16(a)(1)(A).[4]
 
 
 22
 Initially we note that a district court's decisions to reopen a criminal case for the presentation of newly acquired evidence and to reopen examination of a witness are reviewed for abuse of discretion. See United States v. Huber, 772 F.2d 585, 592 (9th Cir.1985); United States v. Sisack, 527 F.2d 917, 919 (9th Cir.1976). We find no error in the court's decision to permit additional cross-examination of Gebro for the limited purpose of asking about the citation notice. Further, because the government did not have possession of the evidence nor know of its existence until the evening before its introduction at trial, it was not obligated under Rule 16 to disclose it.[5]
 
 
 23
 Gebro's second objection has substance. He argues that the district court improperly admitted the citation because it was irrelevant and any probative value was outweighed by potential prejudicial effect. This overstates his point, however. We acknowledge the relevance of portions of this evidence, but we are concerned by the district court's failure to redact some of its contents. The front side of the citation before redaction contained information that the document was a "Notice to Appear," instructions concerning a court appearance, Gebro's name, and the date, which was approximately one month before the bank robbery.[6] On the back side, in Gebro's handwriting, were notations of "Tony's" and "Tony's mom's" phone numbers. Together, the date and the notations on the back tended to show that Gebro knew Tony, whose full name is Anthony DiBlasio, the robber who pleaded guilty, about one month before the robbery. Therefore, these portions of the citation were relevant to Gebro's familiarity with one of the robbers and whether he may have been helping the commission of the robbery.
 
 
 24
 However, the information on the front of the citation indicating that it was a "Notice to Appear" was not relevant and should have been redacted. It was potentially prejudicial because it allowed the jury to speculate about the reason Gebro received the citation. We conclude that the district court abused its discretion in admitting that part of the evidence but that this error was harmless. See United States v. Harrison-Philpot, 978 F.2d 1520, 1527 (9th Cir.1992), cert. denied, 113 S.Ct. 2392 (1993) (nonconstitutional error in "admission of evidence is harmless if it is more probable than not that its admission did not affect the jury's verdict"); see also Fed.R.Crim.P. 52(a). Because ample evidence supported Gebro's conviction and Gebro's credibility already had been called into question,[7] we can conclude that the court's failure to redact the "Notice to Appear" information was harmless error. Therefore, we need not reverse the district court's decision.
 
 
 25
 Gebro's argument that the district court erred in allowing certain rebuttal testimony need not detain us. At issue are statements of Officer Harrington that when he was pursuing Gebro's van, he said over the police radio that the van turned left at the 8600 block of Balboa Boulevard and that he wrote this information in his police report. According to Gebro, these statements were improperly admitted because they were hearsay, not within any exception, and because Harrington's testimony about his police report was not the best evidence.
 
 
 26
 Under Federal Rule of Evidence 801(d)(1)(B), prior statements are not hearsay if they are (1) consistent with a witness's trial testimony and (2) offered to rebut an express or implied charge of recent fabrication or improper influence or motive. Fed.R.Evid. 801(d)(1)(B). The lack of a motive to fabricate when the prior consistent statement was made is a crucial factor in determining its admissibility under Rule 801(d). United States v. Miller, 874 F.2d 1255, 1273-74 (9th Cir.1989).
 
 
 27
 Harrington's statements were admissible under this rule. First, Harrington's prior statements made to police communications when he was pursuing the van and in his police report were consistent with his trial testimony to the effect that he turned onto Balboa Boulevard at the 8600 block. Second, the defense implicitly accused Harrington of recent fabrication by suggesting that he contradicted his earlier testimony on this issue at Gebro's first trial so that his revised testimony would correspond to the government's case.[8] His prior consistent statements were offered to rebut this implicit charge. Moreover, Harrington had no reason to fabricate at the time he made his report.
 
 
 28
 Gebro also challenges the admission of Harrington's rebuttal testimony under the best evidence rule[9] as set out in Federal Rule of Evidence 1002. Specifically, Gebro contends that because Harrington testified about his report, the police report should have been introduced as evidence.
 
 
 29
 We disagree. If Harrington's rebuttal testimony sought to prove the document's contents, the original report or an acceptable copy would be required under Rule 1002. Here, however, Harrington was attempting to rebut a charge of recent fabrication, not trying to prove the truth of the report. Thus, the best evidence rule does not apply.
 
 
 30
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This section provides in pertinent part:
 Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court ... shall authorize counsel to obtain the services.
 18 U.S.C. Sec. 3006A(e)(1).
 
 
 [2]
 At trial, defense witnesses testified to the location of the arrest, which was the most critical part of the duress defense. The defense presented photographs and diagrams of the area and thoroughly presented its position that Gebro turned into the 8400 block of Balboa and then left into the first available parking spot
 In addition, Gebro testified that at the time of the robbery, he believed the two men planned to purchase heroin in the shopping center and provide him with some of it. He claimed he had no knowledge of the bank robbery until Harrington began to follow the van, at which point one of the robbers pointed a gun at his head and told him to drive faster. Gebro said that as soon as he reached the alley behind the apartment complex, he turned into the first available parking space.
 
 
 [3]
 Even assuming, arguendo, that the government knowingly used false testimony, we would not reverse Gebro's conviction because there is no reasonable likelihood that the testimony at issue affected the verdict. The government presented substantial evidence to defeat Gebro's duress and lack of knowledge defenses independent of DeLosh's testimony that the black and white shirt was found in the van. In addition to evidence regarding the pursuit of the van from the bank to the location of Gebro's arrest, the government introduced evidence that a red plaid shirt worn by a robber was found in the van along with the robbers' identifications. Additionally, the jury learned by testimony and a surveillance photograph that a robber leaving the van was wearing a black and white shirt, and it was told by defense counsel in closing argument that the black and white shirt found in the van could not have been worn by one of the robbers. Thus the jury could reach its own conclusions about the discrepancy in the government's case
 
 
 [4]
 This Rule provides in relevant part that "[u]pon request of a defendant the government shall disclose to the defendant and make available for inspection, copying, or photographing: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody, or control of the government...." Fed.R.Crim.P. 16(a)(1)(A)
 
 
 [5]
 Even if the government had been aware of the citation earlier, it had no duty to obtain it from the state police department. See United States v. Gatto, 763 F.2d 1040, 1048-49 (9th Cir.1985); see also United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th Cir.1988) (triggering requirement under Rule 16 is that evidence be in actual custody or control of federal government)
 
 
 [6]
 At the government's request, the booking number, warrant number, and bail amount were redacted from the face of the document. References to the California Vehicle Code sections allegedly violated by Gebro also were excised
 
 
 [7]
 Evidence of the bank robbery demonstrated that it was carefully planned, making it likely that the getaway also was carefully planned. At trial, the jury learned about Gebro's role: He dropped off the men near the bank and then moved the van to a position from which he was ready to drive away from the scene. Gebro's actions at the end of the chase further indicated a lack of duress and suggested he was attempting an escape. Moreover, his credibility was under question because he testified that he was addicted to heroin and because his testimony regarding the duress defense was countered by trial testimony and evidence
 
 
 [8]
 An implicit charge of recent fabrication is evident in the following exchange: Harrington testified on direct examination that when the van reached the end of the driveway by the apartment complex, he saw a man jump from it and then escape over a wall. The defense pointed out that in his earlier testimony, he said, without mentioning a wall, that the man ran through the apartment complex. This difference was important to the defense because it was consistent with its theory that Gebro turned into the 8400 block of Balboa, at which point the driveway is in the middle of the complex so that a man jumping from the van could run through the complex. Harrington's testimony at the retrial was consistent with the government's theory that Gebro turned into the 8600 block, where a man jumping from the van would have to climb a wall
 An implicit charge of recent fabrication also was made when the defense asked Harrington the date on which he photographed the driveway of the apartment complex. Because Harrington photographed it shortly before the retrial, though he had testified on two previous occasions, the defense was implying that he changed his testimony to match the photo.
 
 
 [9]
 This rule states in part: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required...." Fed.R.Evid. 1002