799 F.2d 470
 41 Fair Empl.Prac.Cas. 1157,
41 Empl. Prac. Dec. P 36,560,
21 Fed. R. Evid. Serv. 335
Laura J. BRENEMAN, Plaintiff/Appellant,
v.
KENNECOTT CORPORATION, Defendant/Appellee.
 No. 85-2408.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 12, 1986.
Decided Aug. 19, 1986.
 
 Grace McIlvain, Miller & Pitt, Tucson, Ariz., Edwin B. McLean, Struckmeyer & Wilson, Phoenix, Ariz., for plaintiff/appellant.
 Ruth V. McGregor, Fennemore, Craig, von Ammon, Udall & Powers, Phoenix, Ariz., for defendant/appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before PREGERSON, POOLE, and NOONAN, Circuit Judges.
 PREGERSON, Circuit Judge.
 
 
 1
 Laura Jean Breneman appeals the district court's conclusion that her discharge from employment at Kennecott Corporation ("Kennecott") did not violate Title VII of the Civil Rights Act of 1964. We affirm.
 
 FACTS
 
 2
 Laura Breneman began working for Kennecott in 1960. In 1974 she became Kennecott's first female "foreman." In February 1975, as part of a reduction in force, Kennecott demoted Breneman and reduced her pay. Kennecott also demoted a similarly-situated male foreman to a position of the same grade as Breneman's, but did not reduce his pay. Because of this disparity, Breneman filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In December 1975, Kennecott repromoted Breneman to foreman. After her repromotion, Breneman's direct supervisors were Walter Swingle and Ron Hamilton. Swingle and Hamilton, in turn, reported to Donald Quinn, a superintendent at Kennecott. Hamilton was very critical of Breneman, and often complained of her to Quinn.
 
 
 3
 On April 22, 1978, Breneman went to a party out of town at the home of Don Simpson, a former Kennecott employee. When she went to drive home that night, her car would not start, so she spent the night with the Simpsons. The next morning she called Swingle to tell him that she would not be in to work. She told Swingle that she would have to wait for the stores to open so that she could buy a new starter for her car, and that Simpson's son would replace the starter.
 
 
 4
 Swingle was suspicious of Breneman's excuse for failing to come to work and repeatedly approached Breneman to verify that her car had indeed broken down. In an aside to another employee, deliberately within Swingle's hearing, Breneman strongly implied that Simpson's son had replaced the starter. When Quinn called Simpson to verify Breneman's story, Simpson said he knew nothing about Breneman's car trouble. Quinn concluded that Breneman had lied about her reason for failing to report to work, and discharged her.
 
 
 5
 Breneman sued Kennecott under Title VII, 42 U.S.C. Secs. 2000e-2(a)(1), 2000e-3(a) alleging that her discharge was motivated by sexual discrimination and in retaliation for filing her previous EEOC charge. At trial, Breneman offered into evidence a copy of a letter bearing handwritten notes regarding discussions between Breneman and Hamilton ("Exhibit 15"). The court initially admitted the evidence over Kennecott's hearsay objection, but later struck the exhibit from evidence on hearsay grounds. The court sustained hearsay objections to several items of testimony offered by Breneman as proof of Kennecott's discriminatory intent, and refused to exclude Kennecott's designated representative from the courtroom. Finally, the court found that Kennecott had not violated Title VII by terminating Breneman.
 
 ANALYSIS
 I. Evidentiary Issues
 
 6
 The district court excluded Exhibit 15 because it was not a prior consistent statement within Fed.R.Evid. 801(d)(1)(B). "The trial court has broad discretion regarding the admission of prior consistent statements." United States v. Duncan, 693 F.2d 971, 980 (9th Cir.1982), cert. denied, 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983). A prior consistent statement is admissible only if it was made before the witness had a motive to fabricate. United States v. De Coito, 764 F.2d 690, 694 (9th Cir.1985). It is not apparent from the record whether the note on the back of Exhibit 15 was written before Breneman's discharge. No date is visible on the copy of Exhibit 15 submitted to us. Breneman argued at trial that the note was written on August 4, 1977 because it referred to Breneman's plans to sign the EEOC conciliation agreement. Neither Breneman nor the person to whom the note was apparently written testified regarding the note, nor did Breneman make any offer of proof of the note's contents.
 
 
 7
 Even assuming the note was written before Breneman had a motive to fabricate her testimony, it does not appear that Kennecott charged Breneman with fabrication in any way that would render Exhibit 15 admissible under rule 801(d)(1)(B). Hamilton testified that he did not learn of Breneman's original EEOC charge until his deposition, and that he never discussed the charge with Breneman. Breneman argues that Hamilton impliedly charged her with fabrication by denying that he had ever spoken with Breneman about her charge. Mere contradictory testimony cannot give rise to an implied charge of fabrication.
 
 
 8
 Because there is no evidence as to when the note on the back of Exhibit 15 was written, and because there does not appear to have been any implied charge of fabrication, we conclude that the district court did not abuse its discretion in striking Exhibit 15 from evidence. See Kisor v. Johns-Manville Corp., 783 F.2d 1337, 1340 (9th Cir.1986).
 
 
 9
 The trial court also sustained objections to five items of testimony offered by Breneman as proof of Kennecott's discriminatory intent. Four items consisted of a witness's testimony regarding what a second person had said a third person had said. These items are admissible only "if each part of the combined statements conforms with an exception to the hearsay rule...." Fed.R.Evid. 805 (emphasis added). Because the declarants were all Kennecott employees, Breneman contends that these items are admissible as agent admissions under Fed.R.Evid. 801(d)(2)(D).
 
 
 10
 Rule 801(d)(2)(D) requires the proffering party to lay a foundation to show that an otherwise excludible statement relates to a matter within the scope of the agent's employment. Hoptowit v. Ray, 682 F.2d 1237, 1262 (9th Cir.1982). Breneman provided no evidence that either Maes or Pacheco were involved in Kennecott's discharge of Breneman. Thus, Breneman failed to demonstrate that the proffered statements concerned a matter within the scope of the declarants' employment. Because Breneman offered the statements to prove the truth of the matters asserted therein, the statements were inadmissible hearsay, and correctly excluded.
 
 
 11
 The district court also excluded the deposition testimony of Larry Davis. Local Rule 42(C) of the United States District Court for the District of Arizona provides that the pretrial order prepared by the parties shall indicate whether either party intends to offer depositions at trial. The pretrial order prepared in this case indicates that neither party intended to offer deposition testimony at trial. The district court did not abuse its discretion in excluding this deposition testimony.
 
 
 12
 II. Refusal to Exclude Kennecott's Representative
 
 
 13
 Breneman also contests the district court's refusal to exclude Kennecott's designated representative. We review the district court's decision not to exclude a witness for abuse of discretion. See United States v. Little, 753 F.2d 1420, 1441 (9th Cir.1984).
 
 
 14
 Fed.R.Evid. 615 provides: "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses.... This rule does not authorize exclusion of ... an officer or employee of a party which is not a natural person designated as its representative by its attorney...." Kennecott designated Rulon Ellett as its representative during pretrial depositions. At trial, however, Kennecott designated Quinn as its permitted representative under Rule 615. Breneman contends that once Kennecott designated one person as its representative, Kennecott was bound to retain that person as its representative throughout the course of the litigation.
 
 
 15
 Apparently, no court has dealt previously with Breneman's argument. While the plain language of the rule suggests otherwise, courts have permitted more than one representative to remain during trial. See United States v. Alvarado, 647 F.2d 537, 540 (5th Cir.1981) ("decision as to how many will be excused from sequestration is just as discretionary with the trial judge as who will be excused."); Hampton v. Kroger Co., 618 F.2d 498, 499 n. 3 (8th Cir.1980); J. Weinstein and M. Berger, 3 Weinstein's Evidence p 615 at 615-9 (1985) ("There must be wide discretion in the trial judge to allow multiple representatives."). Contra Oliver B. Cannon and Son, Inc. v. Fidelity and Casualty Co., 519 F.Supp. 668, 679 (D.Del.1981). Clearly, if a corporation may designate two representatives to remain in court during the trial, there is no violation of Rule 615 if, as here, a corporation designates a different single representative for the discovery and trial phases of a case. However, we need not decide this question now because Breneman has made no showing that she was in any way prejudiced by Kennecott designating Quinn as its representative at the trial. See United States v. Causey, 609 F.2d 777, 778 (5th Cir.1980) (per curiam); United States v. West, 607 F.2d 300, 306 (9th Cir.1979) (per curiam) (applying harmless error standard to Rule 615 violation).
 
 III. Merits of Title VII Claim
 
 16
 The district court found that Kennecott had not terminated Breneman because of her gender or in retaliation for her filing of a previous charge of sex discrimination. The court found, rather, that "the principal reason that Quinn decided to discharge [Breneman] was because he concluded that she had not been truthful and that he could no longer trust her."
 
 
 17
 In an action under Title VII, the district court's "conclusions regarding the success or failure of the plaintiff and defendant in meeting [their respective] burdens [of proof] are reviewed under the clearly erroneous test." Piva v. Xerox Corp., 654 F.2d 591, 594 (9th Cir.1981); see also Pullman-Standard v. Swint, 456 U.S. 273, 287-88, 102 S.Ct. 1781, 1789-90, 72 L.Ed.2d 66 (1982); Fed.R.Civ.P. 52(a). Under this standard, we accept the district court's findings unless we are left with the definite and firm conviction that the court made a mistake. Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).
 
 
 18
 The district court concluded that Breneman had failed to show that Kennecott's proffered reason for the discharge was pretextual. As an initial matter, it does not appear that Breneman succeeded in making out even a prima facie case of sex discrimination because she offered no evidence that Kennecott had replaced her by a man. See Jones v. Los Angeles Community College District, 702 F.2d 203, 205 (9th Cir.1983). Even assuming, however, that Breneman was replaced by a man, she offered no persuasive evidence that the reason offered by Kennecott for her discharge--that Quinn thought she had lied to him, and decided he could no longer trust her--was pretextual. Breneman contends that Hamilton and Swingle supplied Quinn with negative reports about her, that Quinn took these reports into consideration in evaluating her performance, and that Quinn's tainted concern for her performance influenced his decision to terminate her. See Fadhl v. City and County of San Francisco, 741 F.2d 1163, 1165-66 (9th Cir.1984). The district court carefully evaluated Breneman's evidence and concluded that her discharge was unrelated to any animosity Hamilton and Swingle had towards her. We cannot say that this conclusion was clearly erroneous.
 
 
 19
 Breneman also contends that her discharge was in retaliation for her earlier EEOC charge. It does not appear that Breneman succeeded in making out a prima facie case of retaliation. See Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1354-55 (9th Cir.1984); Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir.1982). Breneman's only supportive evidence is her own testimony that Hamilton's attitude toward her changed after he found out that she had filed a discrimination charge. Even assuming, however, that Breneman did succeed in making out a prima facie case of retaliation, she offered no evidence to prove that Quinn's reason for her discharge was pretextual. Thus, the district court did not clearly err in concluding that Breneman's discharge was not retaliatory.
 
 
 20
 AFFIRMED.