Marjetta WILKINSON,
Plaintiff–Appellee,

v.

CARNIVAL CRUISE LINES, INC.,
Defendant–Appellant.

No. 89–6180.

United States Court of Appeals,
Eleventh Circuit.

Jan. 15, 1991.

Rodney Earl Walton, Kelley, Drye & Warren, Smathers & Thompson, Miami, Fla., for defendant-appellant.

Joel S. Perwin, Miami, Fla., Grover Miskovsky, Oklahoma City, Okl., Roger A. Vaughan, Jr., Wagner, Cunningham, Vaughan & McLaughlin, Tampa, Fla., for plaintiff-appellee.

Before FAY and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

FAY, Circuit Judge:

Defendant-appellant Carnival Cruise Lines, Inc. ("Carnival") appeals from a final judgment entered in favor of plaintiff-appellee Marjetta Wilkinson for personal injuries sustained by plaintiff in an accident aboard one of Carnival's cruise ships. Although we AFFIRM the district court's refusal to grant Carnival a requested jury instruction on plaintiff's susceptibility to psychiatric injury, we agree with Carnival that the trial court improperly admitted certain hearsay statements, as well as evidence of a subsequent remedial measure. We therefore REVERSE the judgment of the district court and REMAND for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

Marjetta Wilkinson was a passenger on board the "Tropicale," a cruise ship owned by Carnival. On the afternoon of September 30, 1983, after sunning herself for a short time by the pool on the Lido Deck, Ms. Wilkinson left the pool area and walked barefoot towards an automatic, electronically activated sliding glass door on the port side of the ship. As she walked through the door, it closed, running over the toes of her right foot.

Ms. Wilkinson sued Carnival, seeking recovery based upon a negligence theory.[1] She alleged, among other things, that Carnival had failed to maintain the sliding glass door in good operating condition, had failed to warn her of the door's propensity to close without warning, and that the door had failed to operate in a reasonable and safe manner.

As the parties proceeded to trial, Carnival filed a motion for summary judgment, which the trial court referred to a magistrate for consideration, report and recommendation. In its motion, the cruise line contended that the mere occurrence of Ms. Wilkinson's accident, standing alone, did not prove negligence. Further, Carnival argued that the plaintiff could offer no admissible evidence that Carnival had notice of any problems with the sliding glass door before the plaintiff's accident.

Plaintiff responded by characterizing the matter as a "classic, garden variety negligence issue for the jury." With regard to the notice issue, plaintiff submitted the deposition testimony of Tracie Sanders, Ms. Wilkinson's travelling companion and cab-in-mate.[2] Although Ms. Sanders did not witness the accident, she testified to having a conversation with a cabin steward, identified simply as "Fletcher,"[3] shortly thereafter. According to Sanders, the steward

---

1. Plaintiff's original complaint also sought recovery on a breach of contract claim, which was dismissed.

2. At the time of the accident, Ms. Sanders was also Ms. Wilkinson's employee at the Magic Mirror Figure Salon in Oklahoma City, Oklahoma.

3. The deposition of the mysterious Fletcher was never taken, and neither party called him as a witness at trial.

came in and we were discussing the accident, he was wondering what had happened, and after I told him, he was real—you know, he felt real bad and said that he hated that that had happened and that they had been having problems with the door and that he was, you know, hoping they would get it fixed before it happened to a child, because there were children on the ship.

*Deposition of Tracie Sanders,* (R4–63 at 20).[4]

Carnival argued that Ms. Sanders' alleged exchange with Fletcher was inadmissible hearsay and could not be used to prove notice on the defendant's part of any problem with the door in question. Plaintiff, however, countered that steward Fletcher's statement constituted a vicarious admission by the cruise line through its employee, and was therefore not hearsay pursuant to Fed.R.Evid. 801(d)(2)(D).

In response to plaintiff's contention that Fletcher's statement was an admission by Carnival, defendant submitted the affidavit of Jack Stein, an employee of Carnival's Operations Department. The affidavit declared that room stewards, cabin stewards and bellboys are the most junior employees aboard Carnival's vessels; that the function of room stewards is to clean rooms; and that room stewards are not authorized to speak or make admissions on behalf of Carnival, or to work on or speak about electrically operated sliding glass doors. Most important, Stein stated that room stewards are restricted to crew areas of the ship; they are not permitted to be in the passenger area near the pool where the sliding glass door that injured Ms. Wilkin-

son is located. Applying Rule 801(d)(2), the magistrate found that "the affidavit establishes that the statement made by a room steward to Ms. Sanders did not concern a matter within the scope of his agency or employment and therefore is inadmissible hearsay." Accordingly, the magistrate recommended that summary judgment be entered in favor of Carnival on the issue of negligence.

The district court overruled the Report and Recommendation of the magistrate as to the propriety of summary judgment, despite acknowledging that plaintiff's claims were "weak, at best," and "a step away from being foreclosed by the sliding doors of summary judgment." Defendant renewed its objection to the admissibility of the Fletcher statement at the beginning of the trial, moving *in limine* that the statement should be excluded as hearsay. The district court denied the motion, permitting the statement to come into evidence as an admission by a party-opponent under Rule 801(d)(2)(D), and expressly overruling the Magistrate's Report and Recommendation on the merits.[5]

In the same Motion in Limine, defendant also sought to preclude plaintiff from offering any evidence of subsequent remedial measures taken by Carnival. Specifically, several passengers testified that following Ms. Wilkinson's accident, the sliding glass door was kept locked in an "open" position for the remainder of the voyage. The trial court initially denied defendant's motion to have such testimony excluded, and evidence of the door being kept open was admitted over objection. The court reversed its ruling the next day, acknowl-

---

4. The examination of Sanders continued:

Q: Was it your understanding that the door had malfunctioned in the same fashion before?
A: Yes, sir.
Q: And that personnel on the ship, at least this one person that you discussed it with, was concerned that it might—that a similar type thing had happened or had almost happened?
A: Yes, sir.
(R4–63 at 20–21).

5. The court stated:

We have the Motion in Limine regarding the statement by the cabin steward, or whatever his exact title is, to the witness Saunders [SIC]. I am going to permit that statement to come in. I am going to overrule the Magistrate's Report and Recommendation that the statement be kept out.

It is this court's position that the position of the individual in the so-called corporate hierarchy is not in and of itself determinative of an 801(d)(2)(D) type of issue. There is no doubt that this individual was a member of the crew and, therefore, he made the statement under 801(d)2(D). It is not hearsay and it comes in.
(R9–45).

edging that Carnival's keeping the door locked in an open position was a type of remedial measure. It instructed the jury to disregard witness testimony "to the effect that the doors in question had been kept open for the remainder of the cruise."[6]

As the trial progressed, the jury heard the videotaped deposition of Rafael Marcialis, a ship's officer working on board the Tropicale. Marcialis had inspected the door immediately following Ms. Wilkinson's accident. After conducting several walkthroughs, he determined the door to be in "normal operating condition." In addition, Marcialis rendered an opinion that the door allowed adequate time for a person to pass through, and that it had been properly maintained. Marcialis stated that he was not aware of any prior or subsequent accidents involving the sliding door in question.[7]

Because Marcialis had testified that upon inspection the sliding door was in "normal operating condition," the district court determined that the door had been sufficiently opened (no pun intended) for plaintiff to reintroduce the evidence of the subsequent remedial measure—the locking of the door in an open position for the remainder of the cruise—for impeachment purposes.[8] The court therefore allowed the plaintiff to in-

troduce the previously excised testimony of several witnesses pertaining to the open status of the door.[9]

The jury ultimately found in favor of the plaintiff and awarded her $260,000 dollars. This figure was reduced by twenty percent as a result of plaintiff's comparative negligence. The court entered a final judgment for plaintiff, and denied defendant's motions for judgment notwithstanding the verdict, or alternatively, for new trial or remittitur. This appeal followed.

## DISCUSSION

I. *Admissibility of the Cabin Steward's Hearsay Statement.*

■ We first consider the admissibility of certain alleged comments by a room steward, identified only as "Fletcher," to the effect that the Tropicale "had been having problems with the door and that [the steward] was ... hoping they would get it fixed before it happened to a child." This testimony, adduced at trial through the video deposition of Tracie Sanders, was vital to the plaintiff's case, as it was the only evidence offered to prove that Carnival had actual or constructive notice of the risk-creating condition, i.e. previous problems with the sliding door in question.[10]

---

6. The same testimony from other witnesses was excluded. The court noted for the record, however, that it was "conceivable, depending on what type of defense or defenses that the defense puts on, that on rebuttal, for the purposes of impeachment, this type of testimony could come in and the court would revisit the decision at that time."

7. In addition, other passengers testified that they had used the door many times while on board the vessel, and had experienced no problems with it.

8. The court explained, "Primarily, my ruling is centering around the testimony of Marcialis, and it is the court's finding that the fact that the doors remained open at some point ... is impeachment of Marcialis' testimony that everything was fine and normal after the accident." (R11–200).

9. The district court admitted the evidence subject to the following instruction:

Members of the jury, for legal and procedural reasons with which you are not to be concerned, the court earlier struck from the record testimony regarding the condition of the doors after the incident.

You may now consider the following testimony on that point. The testimony you are about to hear regarding the condition of the doors after the incident may be considered by you only as it pertains to the credibility of the witness Rafael Marcialis, whose video testimony you heard yesterday, and not, I repeat, not as evidence of negligence or culpable conduct by the defendant, Carnival Cruise Lines. (R11–315).

10. In maritime tort cases such as this one, in which injury occurs aboard a ship sailing upon navigable waters, federal maritime law governs the substantive legal issues. *Everett v. Carnival Cruise Lines, Inc.*, 912 F.2d 1355, 1358 (11th Cir.1990); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320–21 (1989) (per curiam); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985); *see also Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S.Ct. 406, 408, 3

■ The district court admitted the Fletcher statements as relevant, non-hearsay testimony pursuant to Rule 801(d)(2)(D) of the Federal Rules of Evidence. This Rule provides that a statement is not hearsay if it is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D). Carnival contends that such a ruling was reversible error, and that the district court should have adopted the evidentiary recommendation of the magistrate, who found that the cabin steward Fletcher's statement to Tracie Sanders did not concern a matter within the scope of his agency or employment, and was therefore inadmissible hearsay. We agree.

Nothing in Rule 801(d)(2)(D) prevents the out-of-court statements of low-level employees from coming into evidence as non-hearsay admissions of a party-opponent in appropriate factual scenarios. *See, e.g., Zenith Radio Corp. v. Matsushita Elec. Ind. Co.*, 505 F.Supp. 1190, 1247 (E.D.Pa.1980) (requirement "of managerial responsibilities, if it remains valid after the enactment of the [Federal Rules of Evidence], is pertinent only to authorized admissions" under 801(d)(2)(C), and "not to vicarious admissions" under 801(d)(2)(D)). We wholeheartedly agree with the district court that "the position of the individual in the so-called corporate hierarchy is not in and of itself determinative of an 801(d)(2)(D) type of issue." From this observation, however, the district court concluded that simply because Fletcher was a member of the Tropicale's crew, his statement to Ms. Sanders was covered by the language of Rule 801(d)(2)(D). Respectfully, we believe that such a conclusion begs the question.

The appropriate focus is instead upon whether the cabin steward's statement concerned a "matter within the scope of [his]

agency or employment" with Carnival. We recognize, as suggested in the Notes of the Advisory Committee, that Rule 801(d)(2)(D) broadened the traditional view so that it is no longer necessary to show that an employee or agent declarant possesses "speaking authority," tested by the usual standards of agency law, before a statement can be admitted against the principal. *See* 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(d)(2)(D)[01], at 801–280–89 (1990); S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 727 (4th ed. 1986). But it is necessary, in order to support admissibility, that the content of the declarant's statement concerned a matter within the scope of his agency. *Hill v. Spiegel, Inc.*, 708 F.2d 233, 237 (6th Cir. 1983); *see, e.g., Tallarico v. Trans World Airlines, Inc.*, 881 F.2d 566, 572 (8th Cir. 1989) (in tort suit brought by handicapped minor against airline, trial court did not abuse discretion in refusing to admit derogatory remarks of airline employees as vicarious admissions, where employees were non-management personnel who were not involved in decision to keep minor from boarding aircraft); *Staheli v. Univ. of Mississippi*, 854 F.2d 121, 127 (5th Cir.1988) (in decision affirming denial of university professor's tenure, proffered testimony of fellow accounting professor was not an admission where accounting professor had nothing to do with tenure decision and testimony did not concern matter within scope of his agency); *Miles v. M.N.C. Corp.*, 750 F.2d 867, 874–75 (11th Cir.1985) (in plaintiff's Title VII suit against employer, nature of supervisory positions held by declarant determined admissibility of evidence of alleged racial slur as vicarious admission of employer); *Cebula v. General Elec. Co.*, 614 F.Supp. 260, 266 (D.C.Ill. 1985) (in age discrimination suit against employer, statements of low-level co-work-

L.Ed.2d 550 (1959) (legal rights and liabilities arising from conduct allegedly causing injury aboard ship on navigable waters is "within the full reach of the admiralty jurisdiction and measurable by the standards of maritime law"). Thus, our Circuit has reiterated that, because "the benchmark against which a shipowner's behavior must be measured is ordinary reason-

able care under the circumstances," a showing by plaintiff of actual or constructive notice by defendant of the risk creating condition is a "prerequisite to imposing liability" in cases "where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe*, 867 F.2d at 1322.

ers could not be attributable to employer as admissions, and thus constituted inadmissible hearsay, where plaintiff offered no evidence to suggest that any of the co-workers was involved in the termination decision, or was speaking as to a matter within the scope of their agency or employment).

Thus, the inquiry is whether Fletcher was authorized to act for his principal, Carnival, concerning the matter about which he allegedly spoke. *See Process Control v. Tullahoma Hot Mix Paving Co.,* 79 F.R.D. 223, 225 (1977). In this case, in support of its Reply to Plaintiff's Response to Motion for Summary Judgment, Carnival attached the affidavit of Jack Stein, one of its Operations Department employees. Stein stated, in pertinent parts:

> 5. The function of a room steward is to clean rooms. Room stewards do not work in the engineering department. They are not mechanics, electricians, ship's officers or sliding glass door repairmen.
>
> 6. Room stewards are restricted to crew areas of the ship except for those areas in which they work. A cabin steward such as the "Fletcher" described in the deposition of Tracie Sanders could only work in the passenger area where rooms he serviced were located and in the adjacent service areas (to get ice, food, etc.). Room stewards are not authorized to be in the area of the sliding glass door (near the swimming pool) where Ms. Wilkinson says she was when injured. That is a passenger area.

(R4–65). The magistrate found, and we agree, that Stein's affidavit established "that the statement made by a room steward to Ms. Sanders did not concern a matter within the scope of his agency or employment," and therefore was hearsay.[11]

■ Plaintiff argues that Carnival has not properly preserved the issue on appeal, because "at no point from the beginning of the trial until the time of the jury's verdict did Carnival ever object to the 'Fletcher'

statement on the specific ground that cabin stewards were not permitted to be on the deck where Mrs. Wilkinson was injured." *Brief of Appellee* at 10. On this point, plaintiff has apparently misunderstood its burden. It is well established that "Rule 801(d)(2)(D) requires the *proffering party* to lay a foundation to show that an otherwise excludible statement relates to a matter within the scope of the agent's employment." *Breneman v. Kennecott Corp.,* 799 F.2d 470, 473 (9th Cir.1986) (citing *Hoptowit v. Ray,* 682 F.2d 1237, 1262 (9th Cir.1982)) (emphasis added); *see Mitroff v. Xomox Corp.,* 797 F.2d 271, 276 (6th Cir. 1986); *Lloyd v. Professional Realty Servs., Inc.,* 734 F.2d 1428, 1433 (11th Cir. 1984) (per curiam); *Litton Systems, Inc. v. American Telephone & Telegraph Co.,* 700 F.2d 785, 817 (2d Cir.1983). As one district court has aptly observed with regard to Rule 801(d)(2):

> [A]lthough the necessary proof may certainly be circumstantial, there must be an adequate foundational showing, as to subsection (C), that the agent or servant was in fact authorized to make the statement in question, or as to subsection (D), that the subject of the statement 'concerned a matter' which was within [the] scope of the speaker's agency or employment. Merely showing that a statement was made by one who is identified generally as an agent or employee of the party, without some further proof as to the extent of his authority to make the statement (for purposes of subsection (C)) or as to the scope of his employment (for purposes of subsection (D)), establishes neither.

*White Industries v. Cessna Aircraft Co.,* 611 F.Supp. 1049, 1064 (D.C.Mo.1985) (citation omitted).

Carnival has consistently objected to the admissibility of the Fletcher statements as hearsay, and plaintiff has offered not one whit of evidence at any phase of this pro-

---

11. Absent conformity with one of the categories of non-hearsay statements listed in Rule 801(d), the Fletcher statement is clearly hearsay, since it is a statement, other than one made by the declarant Fletcher testifying at trial or hearing, offered in evidence by plaintiff to prove the truth of the matter asserted, i.e. that Carnival had prior notice of problems with the sliding glass door. *See* Fed.R.Evid. 801(c).

ceeding to lay a predicate for the admissibility of the statement, or to contradict Stein's assessment of the scope of Fletcher's employment as a cabin steward aboard the Tropicale.[12] Consequently, the admission of Tracie Sanders' testimony regarding Fletcher under Rule 801(d)(2)(D) was reversible error.[13]

## II. *Evidence of Subsequent Remedial Measure.*

 Several witnesses testified that at some point following Ms. Wilkinson's accident, the sliding door that injured her was "left in an open position" for the remainder of the cruise. The trial judge correctly determined that such an action constituted a subsequent remedial measure pursuant to Fed.R.Evid. 407.[14] Accordingly, the testimony could not be admitted "to prove negligence or culpable conduct in connection with" the plaintiff's accident. *Id.* The court later allowed the testimony to be admitted, however, as permissible impeachment of ship's officer Marcialis' testimony that the doors were in "normal operating condition" when he inspected them. After reviewing Marcialis' testimony, we find that the district court abused its discretion in allowing evidence of a subsequent remedial measure into evidence for impeachment purposes.

 The second sentence of Rule 407 explicitly acknowledges impeachment as one of the permissible uses for which evidence of subsequent remedial measures may be introduced. Fed.R.Evid. 407; *see also Andres v. Roswell–Windsor Village Apartments,* 777 F.2d 670, 674 (11th Cir. 1985) (per curiam) (noting Advisory Committee's suggestion of permissible uses of evidence of subsequent remedial measures, including impeachment). Nevertheless, most courts and commentators counsel caution in applying this exception, which may well possess the capacity to engulf the rule. *See Petree v. Victor Fluid Power, Inc.,* 887 F.2d 34, 39 (3d Cir.1989) (and authorities cited); *Bickerstaff v. South Central Bell Tel. Co.,* 676 F.2d 163, 168 (5th Cir.1982) (and authorities cited). Care

---

**12.** To be sure, plaintiff speculates that even if cabin stewards were not generally authorized to be in passenger areas, there are a number of ways in which Fletcher might have legitimately acquired knowledge of the defective door in the course and scope of his employment, e.g. he might have been ordered to the area in question, or told of the problems with the doors in connection with his duties. Unfortunately, such speculation does not relieve plaintiff of its evidentiary burden to establish a predicate for the admissibility of Fletcher's statement.

**13.** If 801(d)(2)(D) were the only avenue through which plaintiff had attempted to offer the Fletcher statements, then we might well simply reverse and enter judgment for Carnival on this issue. Our examination of the record, however, reveals that following the magistrate's recommendation that summary judgment be entered in favor of Carnival (which rejected the applicability of 801(d)(2)(D) to Sanders' testimony concerning Fletcher), plaintiff filed a Notice of Intent to Rely on Federal Rule of Evidence 803(24), for admission of "the hearsay statements made to Tracy Saunders [SIC] by the cabin steward, Fletcher." (R4–71).

Because the district court overruled the magistrate's report and admitted the Fletcher statements as non-hearsay admissions of a party-opponent under Rule 801(d)(2)(D), it never considered the applicability of Rule 803(24), the so-called "Catchall" exception to the hearsay

rule (although the point was addressed in defendant Carnival's written Motion in Limine (R5–102 at 3)). Accordingly, we leave it to the district court to determine whether the cabin steward's hearsay statements comport sufficiently with the criteria of Rule 803(24) to justify admission under that exception.

**14.** Rule 407, addressing "Subsequent Remedial Measures," provides in full:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed.R.Evid. 407.

The district court determined that keeping the doors open was "a type of remedial measure by defendant." (R9–47). We agree that the broadened "remedial measures" language of Rule 407 encompasses the action of keeping the sliding doors open. *See* 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 407[01], at 407–5–6 (1990) ("The use of the phrase 'remedial measures' is designed to bring within the scope of the rule any post-accident change, repair or precaution.") (footnotes omitted).

must be taken to insure that Rule 407's impeachment exception is not used merely "as subterfuge to prove negligence or culpability of the defendant." *Petree*, 887 F.2d at 39. "Although any evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach a defendant's testimony that he was using due care at the time of the accident, if this counted as 'impeachment' the exception would swallow the rule." *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 468 (7th Cir.1984).

Second Officer Marcialis testified that on the basis of an inspection performed on the day of Ms. Wilkinson's accident, he determined the door which injured her to be in normal operating condition *at the time of the accident.* He testified that he was not aware of any accidents involving the door prior or subsequent to Ms. Wilkinson's mishap, and that in his opinion—again based upon his inspection on the day of the accident—the door had been properly maintained.

Because the doors were apparently kept permanently "open" at some unspecified point after the incident, plaintiff suggests that such a measure somehow impeaches or contradicts Marcialis' testimony. We disagree. Marcialis made no statements concerning the functioning of the door in the days subsequent to September 30.[15] He did not assert that the Tropicale's crew or the cruise line had exercised "all reasonable care" in maintaining the door.[16] Nor did he make representations that the door in question was in the "safest" or the "best" condition.[17]

In short, the evidence of the subsequent remedial measure in this case impeached nothing in Marcialis' testimony. Moreover, admitting various witnesses' testimony to the fact of the doors being kept open likely gave rise to the precise inference of negligence[18] that Rule 407 was designed to

**15.** Plaintiff argues that "Marcialis testified that there were no problems with the door after the accident, which clearly implied that it was in use after the accident." *Brief of Appellee* at 17. Such a summary and implication are simply not supported by Marcialis' actual testimony, which was confined solely to Marcialis' determination, following his inspection, that the sliding door was in normal operating condition *on the day of the accident.* Nothing in Marcialis' statements suggests the district court's characterization that "everything was fine and normal with the doors both before and after the accident." Marcialis' lack of awareness of any prior or subsequent accidents involving the door implies nothing about the door's actual condition before or after the accident. Indeed, there is no testimony in the record indicating that Marcialis was even aware that the doors were kept open at some later point in the voyage.

**16.** *Cf. Kenny v. Southeastern Pennsylvania Transp. Auth.*, 581 F.2d 351, 356 (3d Cir.1978), *cert. denied,* 439 U.S. 1073, 99 S.Ct. 845, 59 L.Ed.2d 39 (1979) (holding that "when the defendant opens up the issue by claiming that all reasonable care was being exercised at the time, then the plaintiff may attack that contention by showing later repairs which are inconsistent with it"). Professors Saltzburg and Redden comment that the case "serves as a reminder that lawyers who simply claim that the conduct of a defendant was not negligent and was reasonable under the circumstances do not open the door to subsequent repair evidence, whereas lawyers who claim that all reasonable care was being taken do open the door to such evidence."

S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 275 (4th ed. 1986).

In this case, Second Officer Marcialis merely testified that on the basis of his inspection, he found the door to be in normal operating condition on the day of the accident, and that in his opinion, it had been properly maintained. An assertion of reasonable or "proper" maintenance is different from one implying that all reasonable care has been taken under the circumstances. As to the former, "[e]vidence of subsequent remedial measures is no more admissible to rebut a claim of non-negligence than it is to prove negligence directly." *Hardy v. Chemetron Corp.*, 870 F.2d 1007, 1011 (5th Cir. 1989).

**17.** *Cf. Muzyka v. Remington Arms Co.*, 774 F.2d 1309, 1313–14 (5th Cir.1985) (where evidence of subsequent design change was admissible to impeach defendant's claims that its rifle was "the premier rifle, *the* best and *the* safest of its kind on the market") (emphasis in original).

**18.** Despite the court's instruction that the jury was only to consider the "remedial measures" testimony as "it pertains to the credibility of the witness Rafael Marcialis," plaintiff's closing argument seems to have been fairly overt in asking the jury to draw the impermissible inference of negligence from the admission of the "remedial measures" testimony:

Marcialis, the man who says everything was normal, also wants you to believe that nothing was changed to the door after the accident. And the judge gave you an instruction

avoid.[19] Accordingly, the evidence should have remained inadmissible.

### III. "Susceptibility to Psychiatric Injury" Jury Instruction.

Finally, Carnival contends that the district court erred in failing to give a requested jury instruction stating that should the jury find that the plaintiff would have suffered psychiatric injuries from a non-liable cause even if she had not suffered any injuries on board the Tropicale, then any damages awarded must be reduced to reflect that likelihood.[20]

Our standard of review in considering this issue is deferential. On appeal, we examine whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled. *Gregg v. U.S. Industries, Inc.*, 887 F.2d 1462, 1471 (11th Cir.1989) (citing *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1525 (11th Cir.1985)). The trial judge's refusal to give a requested instruction is not error where the substance of that proposed instruction was covered by another instruction which was given. *Pesaplastic*, 750 F.2d at 1525 (citations omitted). "If a requested instruction is refused and is not adequately covered by another instruction, the court will first inquire as to whether the requested instruction is a correct statement of the law. *Id.* In such a scenario, if

---

that said that the fact that they kept them open after the accident doesn't mean they were negligent, but it goes to the credibility of Mr. Marcialis.

Now, what that means is, that if that's all the evidence that we have alone. But we have other evidence. We have the evidence of Minnihan. We have the evidence of Tracie, we have the evidence of all these people that say Marcialis was wrong about the doors.

....

The girls say they weren't normal. They were kept open after. So the ship owner here, Carnival, knew or should have known of the defective nature of this door, they should have had signs on it.

(R13–565). As to the potential curative effect of the court's impeachment instruction, see *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309 (5th Cir.1977) (noting trial judge's observation that " '[y]ou can throw a skunk into the jury box and instruct the jurors not to smell it, but it doesn't do any good' ").

**19.** Two distinct reasons are generally cited as the underlying grounds that traditionally have justified exclusion of evidence of subsequent remedial measures. The first is low relevance: "Although such conduct could be taken as acknowledgment that the prior condition was capable of being involved in a harmful event, it gave weak support to the inference of lack of due care." 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 407[2], at 407–10 (1990); *see* Lempert & Saltzburg, A Modern Approach to Evidence 187–89 (1977), *quoted in* S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 266 (4th ed. 1986). The second, more generally accepted ground is the social policy of encouraging people to take safety precautions. *See* Fed.R.Evid. 407 advisory committee's note.

The underlying assumption for this second justification—that "a person will not take remedial measures because his corrective actions might be used in evidence at a future trial"—has

been attacked as behaviorally "absurd". Weinstein & Berger, *supra*, at 407–12. Lempert & Saltzburg, however, resurrect the rationale by pointing out that, although rarely articulated explicitly by courts, the common sense explanation for the rule is simply "that people who take post-accident safety measures are doing exactly what good citizens should do. In these circumstances, so long as the relevance of the activity is not great, courts do not wish to sanction procedures which appear to punish praiseworthy behavior." Lempert & Saltzburg, *supra*.

Whatever the precise justification for Rule 407, it is clear that the fact that there was no problem found during the post-accident inspection does not eliminate the quite reasonable probability that the door was taken out of service following the accident and inspection in an abundance of caution. If such was the case, Carnival should not be penalized for socially desirable, "good citizen" behavior.

**20.** Carnival requested such an instruction on the basis of *Lancaster v. Norfolk and Western Ry.*, 773 F.2d 807 (7th Cir.1985). There, the Seventh Circuit did not consider the failure to give a similar instruction to be reversible error, for the most part because the railroad, unlike Carnival in this case, failed to offer a specific instruction. The court did, however, observe that a corollary to the famous "eggshell skull" principle—that a tortfeasor takes his victim as he finds him—is that the damages of the hypersensitive victim "must be reduced to reflect the likelihood that he would have been injured anyway, from a nonliable cause, even if the defendant had not injured him." *Id.* at 822. The court noted that it is "desirable in such cases to direct the jury's attention to the issue by a specific instruction." While we do not disagree with the Seventh Circuit's comments, our review of the record in this case requires deference to the district court's sound discretion.

the requested instruction does accurately reflect the law, the next step is to assess whether the instruction addresses an issue that is properly before the jury. *Id.* Even if both of these criteria are met, there must still be a showing of prejudicial harm that resulted from the failure of the trial court to give the requested instruction before the judgment will be disturbed on that ground. *Id.*

█ In this case, the district court explicitly considered and rejected the requested instruction, deciding that the issue was adequately covered under the general language of the standard aggravation charge dealing with "any aggravation of an existing disease." Moreover, Carnival fully and forcefully argued the point in closing argument. After reviewing the record and the instructions as a whole, we hold that the district court's denial of the requested instruction was proper, and fully within its discretion.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED and REMANDED for a new trial.