928 F.2d 1136
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for
Indian Springs State Bank, Plaintiff-Appellee,
v.
Frederik A. FIGGE, Kirsten A. Figge, Defendants-Appellants.
 No. 89-55855.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1990.
Decided March 19, 1991.
 Appeal from the United States District Court for the Central District of California, No. CV-89-0002-HLH; Harry L. Hupp, District Judge, Presiding.
 C.D.Cal.
 AFFIRMED.
 Before HUG, CANBY and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Frederik and Kirsten Figge appeal the district court's affirmance of the bankruptcy court's judgment of nondischargeability of a debt arising from two loans obtained from former Indian Springs State Bank ("ISSB"), now in receivership by the Federal Deposit Insurance Corporation ("FDIC"). We have jurisdiction under 28 U.S.C. Sec. 158(d), and we affirm.[1]
 
 I.
 Nondischargeability
 
 3
 The bankruptcy court found the Figges' debt nondischargeable because (1) the Figges obtained loans through fraudulent misrepresentations, within the meaning of 11 U.S.C. Sec. 523(a)(2)(A), and (2) the Figges obtained loans by submitting materially false financial statements to ISSB, within the meaning of 11 U.S.C. Sec. 523(a)(2)(B). The court further concluded that Frederik Figge had obtained loans as part of a willful and malicious scheme to defraud ISSB and the banking regulators, within the meaning of 11 U.S.C. Sec. 523(a)(6). We conclude the bankruptcy court properly held the Figges' debt nondischargeable under section 523(a)(2)(B) and therefore do not reach the remaining grounds for the bankruptcy court's finding of nondischargeability.
 
 
 4
 Section 523(a)(2)(B) provides, in relevant part, that a debtor cannot be discharged from any debt to the extent it is obtained by use of a statement in writing--
 
 
 5
 (i) that is materially false;
 
 
 6
 (ii) respecting the debtor's ... financial condition;
 
 
 7
 (iii) on which the creditor to whom the debtor is liable ... reasonably relied; and
 
 
 8
 (iv) that the debtor caused to be made or published with intent to deceive.
 
 
 9
 11 U.S.C. Sec. 523(a)(2)(B) (1988); Trattoria, Inc. v. Lansford (In re Lansford), 822 F.2d 902, 904 (9th Cir.1987). We find no error in the bankruptcy court's finding that, to obtain loans in November and December 1982, the Figges submitted materially false financial statements with the intent to deceive ISSB, and that ISSB officials reasonably relied on these written statements in authorizing the loans.
 
 A. Materiality
 
 10
 The Figges concede their June 1982 credit application to ISSB contained inaccurate financial information but claim these inaccuracies were not material, as required by section 523(a)(2)(B)(i). According to the Figges, these inaccuracies relate solely to a $1,900 overvaluation of trust deeds and a $4,000 understatement of loans to credit unions. Based on our review of the record, however, we find sufficient evidence of additional materially false financial information to support the bankruptcy court's finding of materiality.
 
 
 11
 For example, Frederik Figge stated on his June 1982 financial statement that the value of the assets of his "Various Partnerships" was $750,000, but checked "no" on the statement as to whether they were "Subject to Debt." Figge testified at trial, however, that the partnerships were in arrears on their mortgage loans, had exhausted their cash flow reserves, and were facing foreclosure and the prospect of deficiency judgments. It was reasonable for the bankruptcy court to conclude that Figge failed to disclose these debts on the statement submitted to ISSB.
 
 
 12
 In addition, Figge admitted that, within 40 days after submission of his loan application to ISSB, he applied to other financial institutions for loans in which he represented that these same partnership properties were worth $220,000 less than the value he had represented to ISSB. Despite this discrepancy, Figge also admitted that the value of the partnerships or amount of debts owed had not changed.
 
 
 13
 Finally, former ISSB officials testified that these financial misrepresentations were material. Both J.W. Devine and Janet McGraw testified that accurate financial statements provided by the Figges would have impacted upon their credit investigation and ultimate decision. As a result, we find no error in the bankruptcy court's finding of materiality.
 
 B. Reasonable Reliance
 
 14
 We similarly find no error in the bankruptcy court's finding that ISSB's reliance on the June financial statement was reasonable, as required by section 523(a)(2)(B)(iii). According to the Figges, the June 1982 statement was submitted solely to obtain their July 1982 loan, and therefore ISSB's reliance on the statement in authorizing the subsequent loans in November and December 1982 was unreasonable.
 
 
 15
 We conclude that evidence presented at trial reveals that both the Figges and ISSB understood that the June statement was also to be used to obtain the November and December loans.
 
 
 16
 Frederik Figge admitted at trial that ISSB authorized the November and December loans on the basis of the June credit application when he testified that "those loans were given on the same loan application, that was the stipulation that I received at that time, that Mr. Lemaster would give those loans on the same loan application." Moreover, in a letter dated October 31, 1982, one day prior to obtaining the November loan, Figge provided ISSB then-president William Lemaster with information that can reasonably be interpreted as updating Figge's projected 1982 income and capital gains. This letter starts off by stating that "[t]he following serves to give further information...." (Emphasis added). It is reasonable to conclude that this language, along with its submission one day prior to obtaining another $100,000 loan, indicates the information was being provided as a follow-up to Figge's initial (and only) financial statement submitted in June.
 
 
 17
 The Figges' written acknowledgments of both the November and December loans state explicitly, in identical language, the Figges' understanding that the loans were supported by their "financial statement(s) previously delivered to [ISSB]." While arguably this statement could refer to the October 31 letter and its accompanying escrow statement, this is unlikely in light of additional language in the loan acknowledgment letters that states that "I/we confirm by my/our signature(s) below that my/our financial statement(s) sent to you is/are correct." (Emphasis added). Again, we find it reasonable to conclude that this language refers back to the June statement relied on by the bank.
 
 
 18
 Nor do we find persuasive the Figges' argument that ISSB's reliance was unreasonable because it failed to verify properly the Figges' financial statements. Evidence was presented at trial that ISSB conducted its standard credit check, an investigation similar to that employed by other mid-western banks of similar size. Evidence also revealed that ISSB had rejected applications for loans submitted by six other individuals who had attempted to act as "mortgage pullers" on behalf of Figge and his partners. The steps taken by the bank to attempt to verify the Figges' financial statements were sufficient to support the bankruptcy court's finding of reasonable reliance. The Figges' argument, therefore, that ISSB was at fault for failing to uncover what the Figges were apparently attempting to conceal, is without merit. See Lansford, 822 F.2d at 904.
 
 C. Intent to Deceive
 
 19
 We find no error in the bankruptcy court's finding that the Figges intended to deceive ISSB, as required by section 523(a)(2)(B)(iv). The Figges concede they never intended to personally repay the individual ISSB loans. The Figges argue, however, that bank officials, including President Lemaster, agreed to have the loans repaid through the Figges' partnerships.
 
 
 20
 We agree with the FDIC that the Figges' asserted defense of a purported side or secret agreement with bank officials is precluded by the doctrine first established by the Supreme Court in D'Oench, Duhme & Co., Inc. v. FDIC, 315 U.S. 447 (1942), reaffirmed by the Court in Langley v. FDIC, 484 U.S. 86 (1987), and codified at 12 U.S.C. Sec. 1823(e).
 
 II.
 Trial Rulings
 
 21
 The Figges next contend the bankruptcy court erred by excluding the testimony of Sam Daily. We find no abuse of discretion in the court's exclusion of this testimony. Daily was not identified by the Figges as a witness in the pre-trial order. This court has recognized the importance of trial courts eliminating surprise tactics through adherence to pre-trial procedures such as the pre-trial order, see United States v. First Nat'l Bank of Circle, 652 F.2d 882, 886 (9th Cir.1981), and has consistently upheld the exclusion of evidence not identified in the pre-trial order as within the trial court's discretion. See, e.g., Breneman v. Kennecott Corp., 799 F.2d 470, 473 (9th Cir.1986); see also Fed.R.Civ.P. 16(e) (pretrial order "shall control the subsequent course of the action unless modified by a subsequent order"). The bankruptcy court's exclusion of Daily's testimony was within its discretion.
 
 
 22
 Nor do we find error in the bankruptcy court issuing its judgment more than one year after completion of trial. The non-jury trial in this case lasted a total of eight days and involved a plethora of documentary exhibits. The Figges have failed to specify any prejudice they suffered as a result of the delay, and have failed to cite any authority for their argument. See, e.g., United Food & Commercial Workers' Union v. Food Employers Council, Inc., 827 F.2d 519, 522 (9th Cir.1987) (court will not consider argument without legal support).
 
 III.
 Sanctions
 
 23
 Finally, the FDIC's request for an award of double costs and attorney's fees as a sanction against the Figges and their counsel is not justified and is therefore denied. Although the FDIC ultimately prevailed, we do not find the Figges' appeal to be "wholly without merit." See Burkevich v. Air Line Pilots Ass'n, Int'l, 894 F.2d 346, 353 (9th Cir.1990).
 
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Attorney Steven M. Dickson of Topeka, Kansas, signed the brief of appellant at a time that he was not admitted to practice before this court. This is in violation of Ninth Circuit Rule 46-1.2, which states:
 46-1.2 Time for Application
 Any attorney who causes a case to be docketed in this Court or who enters an appearance in this Court, and who is not already admitted to the Bar of the Court, shall simultaneously apply for admission.
 Attorney Dickson did, however, apply and was admitted to practice before this court prior to oral argument. We consider the failure to apply for admission prior to or simultaneous with the filing of the brief to be an inadvertent, though careless, error. We do not strike the brief, however, because the brief also bears the signature of co-counsel Craig M. Lytle, who was properly admitted to practice before this court.