113 F.3d 1241
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lucien LOISEAU, Plaintiff-Appellant,
v.
DEPARTMENT OF HUMAN RESOURCES OF the STATE OF OREGON; Roger
Zwemke individually and in his capacity as Branch Manager of
the Northeast Branch, Adult and Family Services Division;
Jean Stryker, individually and in her capacity as Branch
Manager of the East Branch, Adult and Family Services
Division; Karen Nettler, individually and in her capacity
as Branch Manager of the East Branch, Adult and Family
Services Division, Defendant-Appellees.
 No. 95-36091.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 5, 1997.
Decided April 30, 1997.
 
 1
 Before: FLETCHER and TASHIMA, Circuit Judges, and SCHWARZER, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Lucien Loiseau appeals from the trial court's judgment in favor of the Oregon Department of Human Resources ("ODHR") and several of its employees in his action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3. At trial, Loiseau, a black native of Martinique, French West Indies, and a naturalized United States citizen, claimed national origin and race discrimination, as well as retaliation. On appeal, he challenges the judgment on retaliation and raises an evidentiary issue. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 4
 Because the parties are familiar with the facts and proceedings, we recite them only as necessary to understand our disposition. We address each of Loiseau's contentions, in turn.
 
 
 5
 A. Retaliation.
 
 
 6
 As part of its careful 36-page Opinion and Order, the district court found that the ODHR did not retaliate against Loiseau for complaints of discrimination he made throughout his employment. Loiseau disagrees.
 
 
 7
 "The complex issue of retaliation ... involves a factual inquiry into the employer's motivation and intent." Unt v. Aerospace Corp., 765 F.2d 1440, 1444 (9th Cir.1985). After a bench trial, we review the district court's findings on retaliation for clear error. Id.; Fed.R.Civ.P. 52(a). Under this standard, we must affirm the district court's findings, unless we have a "definite and firm conviction that a mistake has been committed." Edwards v. Occidental Chem. Corp., 892 F.2d 1442, 1447 (9th Cir.1990) (citation and internal quotation omitted).
 
 
 8
 Loiseau first asserts that the district court erroneously construed an August 17, 1986, memorandum regarding one of Loiseau's performance appraisals written by Kim Scranton, a senior administrator at the ODHR. Loiseau sees Scranton's memorandum as a "road map" for the defendants to treat him differently and unfairly because he had received his supervisory position in 1983 as the result of a court order in a prior discrimination action. However, the district court's finding that the memorandum does not demonstrate retaliatory intent is supported by the record.
 
 
 9
 Loiseau asserts that Scranton's memorandum was critical of him even though he had received the highest score possible on a pre-screening questionnaire for a promotion. However, the memorandum itself indicates that Loiseau's high score came as a result of his misstating his prior experience at the ODHR. Loiseau also argues that Scranton's criticisms of his job performance were unwarranted because at the time he was doing well. Yet, the memorandum explains in detail several problems that had come to the attention of Scranton as a result of Loiseau's missteps at work. Loiseau's attempt to explain away these problems as stemming from a "personality conflict" between him and one of the employees he supervised is belied by the fact that the memorandum describes how several employees under Loiseau's supervision, as well as other personnel, made complaints and filed grievances about Loiseau.
 
 
 10
 At the end of the memorandum, Scranton states that Loiseau got his job pursuant to a court order in a discrimination action, and she opines that because of this history Loiseau's immediate supervisors were reluctant to document his "performance deficiencies." This reference to his court-ordered appointment leads Loiseau to argue that one can draw no other conclusion but that the memorandum was a pretext for retaliatory conduct. However, while the district court, as the trier of fact, might have inferred a retaliatory intent from this language, it was not required to do so. In rejecting this argument, the district court noted that the memorandum's criticisms of Loiseau were supported by the testimony of several of Loiseau's co-workers, including some who were personally fond of Loiseau. Further, the person that Loiseau suggests was most directly prompted by this memorandum to retaliate against him, Ben Talley, was an African-American who testified both that he had been pleased with Loiseau's victory and appointment in his original discrimination suit, and that he had wanted to see Loiseau succeed as a supervisor. The district court's reading of Scranton's memorandum was not clearly erroneous.
 
 
 11
 Loiseau next assigns error to the district court's finding that his manager, Roger Zwemke, did not retaliate against him for his complaints of discrimination. Zwemke sent Loiseau numerous memoranda critical of Loiseau's performance in a number of areas. Loiseau points out that some of these memoranda were written shortly after he had made discrimination complaints. On one occasion, April 29, 1988, on one workday after Loiseau accused Zwemke of discriminating against him, Zwemke sent four memos to Loiseau. However, while it is true that proximity in time between adverse personnel decisions and protected activity could support an inference of retaliation, Yartzoff v. Thomas, 809 F.2d 1371, 1375-77 (9th Cir.1987), the trier of fact is not required to draw such an inference. The district judge, as the trier of fact, could properly conclude that retaliation played no role in Zwemke's actions.
 
 
 12
 First, Loiseau admitted that there was nothing discriminatory in the content of any of Zwemke's memoranda. Second, Zwemke denied any retaliatory intent and testified that he often sent "two, three, or four" memoranda to the supervisors he managed. Third, the evidence showed that Zwemke, a former quality control manager, subjected all the employees working beneath him to his prolific memo-writing and exacting management style. Fourth, there was testimony that Zwemke's criticisms of Loiseau were well-founded, and not based on a discriminatory or retaliatory motive. Lastly, we disagree that Zwemke wrote to Loiseau regarding the General Assistance Medical Management Program cards to harass Loiseau and make it impossible for him to do his job. These memoranda can reasonably be read as demonstrating that the detail-oriented Zwemke was attempting to solve a bureaucratic problem and that Loiseau was both resistant to his management style and had considerable difficulty systematically analyzing the problem and implementing a fruitful solution. There was no error.
 
 
 13
 In sum, based on the extensive contrary evidence in the record, and with appropriate deference to the district court's first-hand view of the witnesses, the finding that there was no retaliatory link between Loiseau's discrimination complaints and Zwemke's actions was not clearly erroneous. See Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."); Bauman v. Block, 940 F.2d 1211, 1222 (9th Cir.1991).
 
 
 14
 Similarly, Loiseau's allegations that the ODHR failed adequately to train him, and that he was retaliated against by another manager, Jean Stryker, are equally meritless. Loiseau claims that after returning to the East Portland branch from a year of medical leave, he was not given proper training regarding policy changes made during his leave. However, Loiseau had then already been a manager for six years. Nonetheless, he received a day and a half of training regarding updates to his policy manual, two weeks of training in the food stamp program and continual efforts by his supervisors to identify his problem areas and assist him. At the request of Loiseau's supervisors, Linda Montgomery, ODHR's Regional Trainer, visited Loiseau at work to attempt to identify other areas where training was required. However, Loiseau became uncomfortable with her presence and asked her to leave. From this record, it is difficult to conclude that the defendants did not make a good faith effort adequately to train Loiseau, and even more difficult to conclude that any deficiencies were the result of retaliatory intent.
 
 
 15
 As to Stryker, although her memoranda to Loiseau were sometimes intemperate, given the substantial evidence regarding Loiseau's deficiencies as a supervisor while at the East Portland branch, it was not clear error to find that retaliation played no part in her failing performance appraisals and letter of reprimand.
 
 
 16
 In essence, Loiseau has presented us with a closing argument for his retaliation claim, arguing the evidence in the light most favorable to his theory of the case. It is, however, an argument that should be made to the finder of fact--not the appellate court. Where, as here, the district court has chosen, after careful consideration of the evidence, to reject the plaintiff's argument in favor of a plausible alternate view of the evidence, we will not accept the invitation to substitute our judgment for that of the district court.
 
 
 17
 B. Exclusion of Witnesses.
 
 
 18
 Loiseau asserts that the district court erred by failing to exclude from the courtroom two witnesses, Bea (Brooks) Hudson and Kenneth Jensen, under Fed.R.Evid. 615. We review a district court's decision not to exclude a witness for abuse of discretion. Breneman v. Kennecott Corp., 799 F.2d 470, 473 (9th Cir.1986). The district court did not abuse its discretion in exempting Hudson from its exclusion order under either Rule 615(2) or Rule 615(3). ODHR was entitled to have a designated representative exempted from the exclusion order. Hudson had been an employee of the ODHR during the time of the incidents at issue, worked for the state at the time of trial as a civil rights manager in the Department of Transportation, and was the ODHR's designated representative.
 
 
 19
 As for expert witness Jensen, Loiseau never objected to his presence. Even if the alleged error with regard to Jensen was fully preserved, the district court's explicit finding that it made its findings independent of Jensen's testimony precludes a finding that the error was prejudicial. See id. at 474 (error under Rule 615 must be prejudicial).
 
 
 20
 AFFIRMED.
 
 
 
 *
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit, except as provided by Ninth Cir.R. 36-3